**Ex parte Alan Lynn RICHARDSON,
Applicant.**

No. AP–74824.

Court of Criminal Appeals of Texas.

Sept. 13, 2006.

Melvyn Carson Bruder, Dallas, for Appellant.

Patrick C. Batchelor, Criminal District Atty., Corsicana, Matthew Paul, State's Atty., Austin, for State.

KELLER, P.J., delivered the opinion of the Court in which MEYERS, WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

Applicant asks us to overturn his probation revocation because the judge who presided over the revocation proceeding was the prosecutor in the original prosecution. The question is whether he may obtain relief on this claim by way of postconviction habeas corpus—even though applicant had this information before pleading true and he chose not to complain. We hold that he may not.

Applicant was originally sentenced to confinement for eight years, but imposition of sentence was suspended and he was placed on probation. The State later filed a motion to revoke probation. Pursuant to an agreement between the parties, applicant pled true and was sentenced to seven years in prison. The judge presiding over the revocation proceedings was the prosecutor in the original prosecution. Before the plea, applicant was aware of this fact and of the possibility of having the judge recused, but he instructed counsel that he wished to proceed with the informal plea agreement. In this application for writ of habeas corpus, he complains that the trial judge was disqualified from hearing the revocation proceedings because he was the prosecutor in the original criminal proceedings from which applicant's probation arose.

■ Tex. Const., Art. V, § 11 provides, "No judge shall sit in any case ... when the judge shall have been counsel in the case." Tex.Code Crim. Proc., Art. 30.01 provides, "No judge ... shall sit in any case ... where he has been counsel for the

State or the accused." In *Ex parte Miller*, we held that the proceeding imposing probation and the proceeding revoking probation were the same case for the purpose of these provisions, and that a judge was statutorily and constitutionally disqualified from presiding over a revocation hearing if he had prosecuted the original action.[1] *Miller* further held that this defect could not be forfeited or waived, it rendered the judgment void, and it could be raised at any time, including for the first time on habeas corpus.[2]

In the twenty-one years since *Miller* was decided, our habeas corpus jurisprudence has taken a path that prompts us now to re-examine that holding. One rationale for finding a judicial act to be void, and therefore possibly cognizable on habeas, would be lack of jurisdiction. In *Davis v. State*, we clarified that a judge's lack of authority to preside over the proceedings is not the same as a lack of jurisdiction.[3] *Davis* nevertheless suggested, in *dicta*, that a lack of authority due to a judge's "relationship to the case or a party" rendered the judge's actions "a nullity."[4] But whether the judge's lack of authority necessarily renders his actions a nullity that is correctable on habeas corpus is an issue ripe for re-examination.

In two relatively recent decisions, we have held that habeas corpus did not lie for challenges to a judge's lack of authority to do certain acts when the party could have raised the issue earlier, at trial or on direct appeal. *Ex parte Townsend* held that a defendant could not obtain relief on habeas corpus on a claim that the judge was without authority to stack his sentences.[5] In doing so, we overruled a prior habeas case that had granted relief on such a claim.[6] In *Ex parte Pena*, we held that a defendant could not raise for the first time on habeas a trial court's improper imposition of a $10,000 fine that was not authorized because the jury did not impose it.[7] Significantly, we stated that even if the defendant had alleged "a constitutional or *jurisdictional* defect, he would not be entitled to habeas corpus relief because he could have, and should have, complained about the fine at the time it was imposed or on direct appeal."[8]

It is true that the present case can be factually distinguished from these cases. We are not dealing here with an unauthorized order issued in the course of judicial proceedings but with the lack of authority to preside over the proceedings themselves. Nevertheless, the trend of this Court has been to draw stricter boundaries regarding what claims may be advanced on habeas. We have often stated that "the Great Writ should not be used" to litigate matters "which should have been raised on appeal"[9] or at trial,[10] and while we have not always consistently followed this maxim in the past, in recent years we have more closely adhered to it.

1. 696 S.W.2d 908, 910 (Tex.Crim.App.1985).

2. *Id.*

3. 956 S.W.2d 555, 557–559 (Tex.Crim.App. 1997).

4. *Id.* at 559.

5. 137 S.W.3d 79, 81–82 (Tex.Crim.App.2004).

6. *Id.*

7. 71 S.W.3d 336 (Tex.Crim.App.2002).

8. *Id.* at 338.

9. *See Townsend*, 137 S.W.3d at 81.

10. *Ex parte Boyd*, 58 S.W.3d 134, 136 (Tex. Crim.App.2001); *see also Ex parte Bagley*, 509 S.W.2d 332, 334 (Tex.Crim.App.1974); *Pena*, 71 S.W.3d at 338 n. 7 (citing *Bagley* and *Boyd* ).

**714**

In this case, applicant was aware at trial that the trial judge was subject to disqualification, but he instructed counsel to proceed with the plea anyway. The issue could have been raised at trial by objection or motion to recuse. If rejected there, it could have been raised on direct appeal. In line with our opinions in *Townsend* and *Pena*, we find that applicant's claim may not now be considered on habeas corpus. To the extent *Miller* and cases following it held to the contrary, they are overruled. We deny relief.

JOHNSON, J., filed a concurring opinion.

PRICE, J., dissents.

JOHNSON, J., concurring.

When faced with claims that assert harm from constitutional violations, this Court frequently cites its decision in *Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App. 1997), for the proposition that only errors that the United States Supreme Court has designated as "structural" are immune to harm analysis.[1] In my view, the term "structural" has become as magic word. Errors called "fundamental," "infecting the entire process," "basic," and other synonyms for the meaning assigned by the Supreme Court to the word "structural," are dismissed because the Supreme Court did not use the magic word to describe a particular error. Such treatment elevates form over substance. The proper analysis is to examine the effect of the alleged error on the trial process, just as the Supreme Court did in *Fulminante*.

After listing specific errors that are not subject to harm analysis, the Court set out the basis for finding that the listed errors were "structural"; "Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."[2] *Fulminante* at 310, 111 S.Ct. 1246. While "structural"may be a useful shorthand for such an defect, it is illogical to assume that the four justices who were on the Court at the time of *Fulminante*, the five justices who have joined the Court since then, and all future judges will use that word as a term of art, continue to use it, or even use it again to describe such a defect in the trial process. We should adopt as our standard for "defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards," the true standard of *Fulminante*: a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.

I concur only in the judgment of the Court.

**1.** *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

**2.** "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Fulminante* at 310, 111 S.Ct. 1246, *quoting Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460(1986) (citation omitted).