# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00080-CR

## Ex parte Gaylon Brad Carter

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 75952, HONORABLE LINDA RODRIGUEZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In 2007, a jury convicted Gaylon Brad Carter of driving while intoxicated. His punishment was assessed at 180 days in jail and a $1000 fine, but imposition of sentence was suspended and he was placed on community supervision for two years. Carter now appeals from an order denying relief on his post-conviction application for writ of habeas corpus. *See* Tex. Code Crim. Proc. Ann. arts. 11.072, .09 (West 2005). We affirm the order.

In his writ application, Carter alleged that he was denied his constitutional right to an impartial jury at his trial as a result of remarks made by a venire member during jury selection. He further alleged that his trial counsel's representation was constitutionally deficient because he failed to object to these remarks or move for a mistrial. The county court at law denied relief after hearing arguments by counsel.

Before discussing the merits of Carter's contentions, we address the State's assertion that Carter was not entitled to habeas corpus relief because his community supervision had ended

before he filed his habeas corpus application. As a factual matter, this assertion is contrary to the record. Moreover, physical confinement or restraint is not a prerequisite for misdemeanor habeas corpus relief. *Ex parte Schmidt*, 109 S.W.3d 480, 483 (Tex. Crim. App. 2003); *Ex parte Davis*, 748 S.W.2d 555, 557 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

## BACKGROUND

Shortly before noon on October 10, 2004, Carter's automobile swerved into the left lane of a residential street, struck a stone mailbox in front of Pat Murphy's residence, and came to a stop at the end of the block. Murphy, his wife Debbie, and his son Jessie testified that they spoke to Carter, who was the only occupant of the vehicle, immediately after the accident. All three said that he had a strong odor of alcoholic beverage about him. Murphy testified that Carter's speech was slurred, and he "couldn't hardly talk." Carter told Murphy that he had been up all night at a party. Each of the Murphys was of the opinion that Carter was intoxicated.

Deputy Kenneth Carpenter was the first officer to arrive at the scene. Carpenter testified that when he first approached Carter, he noticed that "he had an odor of alcohol on his breath as he spoke, his eyes were glassy, and his speech was slurred." At Carpenter's direction, Carter performed three field tests: the walk-and-turn, the one-leg stand, and the ABC's. Carpenter testified that in each of these tests, he observed clues indicating that Carter was intoxicated.

Trooper Jesse Amaya was called to the scene to administer the horizontal gaze nystagmus test. Amaya testified that Carter displayed six of a possible six clues indicating intoxication. Amaya also testified that Carter agreed to submit to a portable breath test, and that this test indicated the presence of alcohol.

2

Carpenter arrested Carter and transported him to the Hays County jail. A video unit in Carpenter's patrol car was operating from the time Carpenter arrived at the scene of the accident until he arrived at the jail with Carter at 2:00 p.m. The video was admitted in evidence and shown to the jury.

At the jail, Carter agreed to submit a breath sample for testing. Amaya, who is certified to operate the Intoxilyzer 5000 machine, administered the test. Amaya testified that he conducted the test in the prescribed manner. Antonio Ortiz, the technical supervisor for the breath test program, testified that the machine in question was operating properly. The printed test results showed that appellant had an alcohol concentration of 0.157 and 0.155 in the two breath samples tested.

The principal defense witness was Charles Smith, an expert on alcohol and drug testing. Smith testified to the limitations of the Intoxilyzer 5000 and explained how it often produced inaccurate results. Smith expressed the opinion that the machine is not reliable because "the way the machine is tested, it's poor science." Smith also described the proper manner of administering the field sobriety tests. The gist of Smith's testimony was that the testing of Carter had been conducted improperly.

**BIASED JURY PANEL**

Carter's application for habeas corpus relief was based on the following exchange between the prosecutor, Sydney Norris, and venire member Perry:

3

MS. NORRIS: . . . Okay. I'm also going to be calling Deputy Ken Carpenter. He works for the Sheriff's Office here in Hays County. Anybody know him? Any experiences with Deputy Carpenter?

Also a trooper, Jesse Amaya?

Yes. You're Mr. Perry?

VENIREPERSON PERRY: I work with Jesse daily.

MS. NORRIS: You work for the deputies office—the Sheriff's Office over in Caldwell County; is that correct?

VENIREPERSON PERRY: Yes, ma'am. And Amaya is stationed out of our—out of our office.

MS. NORRIS: Will your relationship with Trooper Amaya affect your determination in judging his credibility or assessing the facts of this case?

VENIREPERSON PERRY: I feel that Jesse is very straight-forward, truthful and honest, and I would have to agree with whatever he testified to.

MS. NORRIS: So you—you—would you wait and listen to his testimony in this case before considering him a credible witness, or would you automatically judge him as credible?

VENIREPERSON PERRY: I would automatically judge him as a credible witness. Jesse don't file a case unless he figures he's right.

Perry was excused for cause and did not serve on the jury that convicted Carter. Nevertheless, it is Carter's contention that Perry's comments endorsing Amaya's credibility "would most certainly instill a panel-wide bias in favor of the State and against [Carter] with regard to any testimony offered by Trooper Amaya." Carter asserts that even though Perry did not serve on the jury, "the taint produced by his comments infected the entire panel, severely prejudicing the defense in the process." *See Russell v. State*, 146 S.W.3d 705, 715 (Tex. App.—Texarkana 2004, no pet.)

4

(stating that comments by prospective juror may harm defendant if reasonably calculated to prejudice other members of panel).

Carter did not object to Perry's comments or otherwise raise this issue in the trial court. The court of criminal appeals has emphasized that habeas corpus should not be used to litigate matters that could have been raised on appeal or at trial. *Ex parte Richardson*, 201 S.W.3d 712, 713 (Tex. Crim. App. 2006). Carter could have objected to Perry's remarks as biasing the jury panel and requested a mistrial. If this relief had been denied, Carter could have raised the issue on direct appeal.

The court of criminal appeals has also held that an applicant for habeas corpus relief must prove by a preponderance of the evidence that the error contributed to his conviction or punishment. *Ex parte Williams*, 65 S.W.3d 656, 658 (Tex. Crim. App. 2001). Carter's writ application was not supported by affidavit, and he did not call any witnesses at the hearing below. In the absence of any direct evidence that Perry's remarks had an effect on the jurors, it was Carter's burden to show that Perry's remarks, in and of themselves, were so prejudicial to the defense as to warrant the conclusion that they probably affected the outcome of the trial. *See Ex parte Fierro*, 934 S.W.2d 370, 376-77 (Tex. Crim. App. 1996).

The information on which Carter was prosecuted alleged intoxication under both statutory definitions. *See* Tex. Penal Code Ann. § 49.01(2) (West 2003). Amaya's testimony regarding Carter's manifestations of intoxication at the scene was corroborated by the testimony of the other officer and the three civilian witnesses. The jury also saw Carter as he appeared on the video. And although Amaya's testimony was critical to the proof of Carter's alcohol concentration,

Carter's defense to the Intoxilyzer evidence was based on a challenge to the science underlying the machine and not on any suggestion that Amaya's testimony was untrue. Considering all of the evidence adduced at the trial, we conclude that it is more probable than not that the jurors would have convicted Carter of driving while intoxicated even if they had not heard Perry's endorsement of Amaya's credibility during voir dire. Point of error two is overruled.

## INEFFECTIVE ASSISTANCE

Carter further contends that his trial counsel was ineffective because he did not object to Perry's comments, ask for a mistrial, or preserve the matter for appeal. To prevail on this claim, it was Carter's burden to show by a preponderance of the evidence that his attorney was not functioning effectively as counsel, and that the error prejudiced Carter's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). An allegation of defective representation must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Carter's trial attorney did not testify at the writ hearing. Thus, there is no evidence as to the attorney's reason for having failed to make an issue of Perry's remarks. We do not believe that those remarks were so outrageous or prejudicial that any competent attorney would have objected and moved for a mistrial. We must presume that Carter's defense counsel, who had the benefit of being present during jury selection and could see the reaction of the panel to Perry's remarks, had a sound reason for handling the matter as he did. Carter failed to affirmatively demonstrate that counsel's representation was defective.

Moreover, as we have already explained, Carter did not show by a preponderance of the evidence that Perry's comments affected the outcome of the trial. Thus, Carter did not show by a preponderance of the evidence that but for counsel's alleged deficient performance, the result of the trial would have been different. *Strickland*, 466 U.S. at 694; *Perez*, 310 S.W.3d at 893. Point of error one is overruled.

The order denying habeas corpus relief is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: November 5, 2010

Do Not Publish

7