

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1621-10

### RAYMOND DEAN LACKEY, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### FANNIN  COUNTY

**HERVEY, J.,** filed a dissenting opinion in which **MEYERS** and **KEASLER, JJ.,** joined.

### <u>DISSENTING OPINION</u>

I disagree with the disposition of this case, and I write separately to explain my reasoning.  Today, a majority of the Court uses our rules of procedural default to avoid reaching the merits of the State's appeal, and in doing so, they also further confuse bench and bar regarding the applications of the rules for error preservation.

This Court's jurisprudence in the area of judicial authority and qualifications has been inconsistent up to this point, and as a result, uncertainty has been created where none

should exist. Unfortunately, today the majority continues that trend despite correctly identifying the problem. *See* Maj. Op. at 9 n.19 (noting that we have found questions involving judicial qualifications and authority ripe for reexamination).

As early as 1851, the Texas Supreme Court addressed the impact of a state constitutional provision disqualifying a judge from presiding. *See Garrett v. Gaines*, 6 Tex. 435, 447-48 (1851). In discussing that provision, the Court stated, "This prohibition does not divest the court of jurisdiction, but personally incapacitates the judge from sitting for the purpose of hearing and determining the cause on its merits, or from making any order which would prevent the cause from being heard and determined on its merits." *Id.* Later, the Court of Criminal Appeals held that if a constitutionally disqualified judge purports to preside and render a judgment in a trial matter, then "[t]he trial was a nullity, the judgment void, and the cause stands upon the docket of the district court as if the proceedings complained of in the record had not occurred." *Abram v. State*, 31 Tex. Crim. 449, 452, 20 S.W. 987, 989 (1893). Nine years later we extended the holdings in *Garrett* and *Abram*, when we held that a judgment rendered by a statutorily or constitutionally disqualified judge is null and void. *Gresham v. State*, 43 Tex. Crim. 466, 467, 66 S.W. 845, 845 (1902).

It appears that this Court's first statement equating a judge's disqualification, or lack of qualifications, to a court's jurisdiction came in 1969. *Ex parte Washington*, 442 S.W.2d 391, 392 (Tex. Crim. App. 1969). In that case, the Court held that "[t]he

disqualification of a judge is a matter affecting the jurisdiction and power of the court to act and cannot be waived." *Id.* Unfortunately, the *Washington* Court cited two cases from the Texas Court of Civil Appeals for that proposition. *See Pahl v. Whitt*, 304 S.W.2d 250, 252 (Tex. Civ. App.—El Paso 1957, no writ); *Lee v. British-American Mortgage Co.*, 51 Tex. Civ. App. 272, 277, 115 S.W. 320, 322 (Austin 1908, writ dism'd). However, even more regrettable is that *Pahl* never held that a disqualification affects jurisdiction, and although the *Lee* Court did so hold, the authority that court relied on was inapposite.[1] Twenty-six years later, Judge Meyers explained that "this Court is prone to characterize any nonwaivable requirement of the law as jurisdictional, with the invariable consequence that its opinions are more confusing than they need to be." *Stine v. State*, 908 S.W.2d 429, 434 (Tex. Crim. App. 1995) (Meyers, J., concurring). I agree. He went on to say that "calling something jurisdictional is not just a different way of saying that a judge lacks authority to do it." *Id.* However, a plurality of the Court in *Stine* held that the constitutional provision in question was jurisdictional. *Id.* at 433 (plurality op.).

Two years after this Court's decision in *Stine*, we began to shift our jurisprudence relating to the qualifications and authority of judges once again. *See Davis v. State*, 956 S.W.2d 555, 559-60 (Tex. Crim. App. 1997). Reiterating the point first made by the

---

[1]*See Lee*, 115 S.W. at 322 (citing *City of Dallas v. Peacock*, 89 Tex. 58, 60-63, 33 S.W. 220, 220-22 (1895) (holding that parties to a suit cannot waive a judge's disqualification, but not equating inability to consent to a loss of jurisdiction)).

Texas Supreme Court in 1851, the *Davis* Court disavowed the characterization that "the authority of the judge to preside [is] a jurisdictional issue . . . ." *Id.* at 559. We then proceeded to distinguish between a disqualified judge and an unqualified judge and whether the prohibition was constitutional or statutory in nature.[2] *Id.* at 559-60. In *Ex parte Seidel*, 39 S.W.3d 221, 224 (Tex. Crim. App. 2001), we continued to draw new distinctions when we held that a judge's lack of authority can be categorized into two types of errors, illegal and irregular. In dissent, Judge Womack lamented that "lack of authority does not make a judgment void, although we have mistakenly said so more than once." *Id.* at 225 (Womack, J., dissenting, joined by Keller, P.J., and Meyers, J.). Judge Womack's frustrations are certainly understandable in light of this recitation of the Court's jurisprudence in this area.[3]

Today, the Court affirms the judgment of the court of appeals, "presumably to include a new hearing on the appellant's motions to suppress conducted before an individual who is actually qualified to enter it on behalf of the trial court." Maj. Op. at 20-21. But we are also told that, regardless of whether the orders entered were void or

---

[2]My research has revealed no historical (or meaningful) difference between an unqualified judge and a disqualified judge, or a constitutional disqualification and a statutory disqualification. This is not to say such a distinction should not exist. Rather, it is merely intended to point out that there is an on-going debate as to whether such orders and judgments are void or voidable.

[3]*See also Nix v. State*, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001) (identifying a "nearly exclusive" list of situations when judgments are void, but not indicating that judicial qualifications or authority issues are among them).

voidable, "appellant timely challenged them in the trial court . . . ." *Id.* In contrast, the court of appeals granted relief based on its holding that the orders entered were *void* and that no objection was necessary. *Lackey v. State*, 322 S.W.3d 863, 869 (Tex. App.—Texarkana 2010). The conundrum presented is that our case law indicates, and the court of appeals agreed, that such orders are void and not subject to waiver,[4] but the majority grants relief by using the rules of procedural default to hold that Appellant preserved his claim. Thus, the majority explicitly declines to address the merits of the State's voidability issue, but it proceeds to grant the relief it would have granted if it had held the orders in this case were void.[5] Maj. Op. at 11-12, 20. I am unable to join the majority in concluding that the dispositive issue here is that Appellant preserved his claim by making a timely and specific objection at trial when we decline to address the voidability issue.[6]

---

[4]*Id.*

[5]The jurisprudence of this Court informs us that, regardless of whether we characterize the issue as one of jurisdiction or one of judicial authority, throughout the overwhelming history of this Court we have held such orders to be void.

[6]This Court has held numerous times that a void judgment can be attacked for the first time on appeal because the judgment was a nullity and there is nothing to preserve. *See Nix*, 65 S.W.3d at 667-68; *Seidel*, 39 S.W.3d at 225; *Hoang v. State*, 872 S.W.2d 694, 697-98 (Tex. Crim. App. 1993). *But see Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). It would seem that if the orders entered in this case are void due to the court lacking jurisdiction, then Appellant would have no duty to object at trial. *Marin*, 851 S.W.2d at 279 (holding that a lack of jurisdiction is a category one claim that cannot be waived or forfeited). On the other hand, if the orders entered were voidable and nonjurisdictional, then such a claim would be a category three right under *Marin*, and Appellant should be required to object. *Id.*; *see also Ex parte Von Koenneritz*, 105 Tex. Crim. 135, 137, 286 S.W. 987, 987-88 (1926) (quoting *Ex parte Boland*, 11 Tex. Ct. App. 159 (1881)) ("The ordinary mode of seeking redress against a voidable

If the question of whether the orders in this case are void or voidable has not been answered, I think that ambiguity is derived from *Davis*, where we apparently[7] began returning our relevant case law to its oldest roots. *See Garrett*, 6 Tex. at 448 (holding that an order or judgment issued by a disqualified judge is void but not because the court lacked jurisdiction). Unlike the majority, I would reach the merits of the State's ground for review because if the question of voidability is indeed unanswered, then this Court has a duty to settle an important question of state law that has not been—but should be—settled by the Court of Criminal Appeals. Tex. R. App. P. 66.3(b). This concern is of even greater importance here, in my opinion, because this Court has created the problem we now decline to address.[8]

I would have held that the orders entered by Skotnik (the visiting judge) were voidable, not void. Black's Law Dictionary defines "void judgment," in relevant part, as "[a] judgment that has no legal force or effect, the invalidity of which may be asserted by any party whose rights are affected at any time and any place, whether directly or

---

judgment in a criminal proceeding would be by appeal.").

[7]Maj. Op. at 9 n.19; *accord Ex parte Richardson*, 201 S.W.3d 712, 713 (Tex. Crim. App. 2006) (stating that "*Davis* nevertheless suggested, in *dicta*, that a lack of authority due to a judge's 'relationship to the case or a party' rendered the judge's actions 'a nullity'").

[8]"I beheld the wretch—the miserable monster whom I had created. [And] I remained during the rest of the night, walking up and down in the greatest agitation, listening attentively, catching and fearing each sound as if it were to announce the approach of the demoniacal corpse to which I had so miserably given life." MARY WOLLSTONECRAFT SHELLY, FRANKENSTEIN: OR, THE MODERN PROMETHEUS 100-01 (G & W.B. Whittaker 1823).

collaterally" because it "is incapable of being confirmed, ratified, or enforced in any manner or to any degree." BLACK'S LAW DICTIONARY 848 (7th ed. 1999). In contrast, a voidable judgment is defined as "[a] judgment that, although seemingly valid, is defective in some material way" and that, "although rendered by a court having jurisdiction, is irregular or erroneous." *Id.*

The orders entered by Skotnik in this case were irregular and materially defective. He lacked the qualifications to be appointed as a visiting judge, and although his orders seemed valid (at least until Appellant discovered Skotnik was not qualified), they were actually rendered by a court with jurisdiction but without a qualified judge to properly invoke that jurisdiction. Moreover, the underlying rationale supporting void judgments has eroded with the passage of time. That erosion is particularly evident here, where we have held that these issues are ripe for review and that, while judicial qualifications and authority are important issues, they are not jurisdictional.[9] For these reasons, I would hold that the orders entered were voidable, not void, and that Rule 33.1 of the Texas Rules of Appellate Procedure should be applied to these circumstances.

Assuming that our procedural default rules apply here, I would hold that because Appellant failed to *timely* object to the visiting judge's qualifications, he should be prevented from raising his claim now. To preserve error a complaint must be "made to the trial court by a timely request, objection, or motion that . . . state[s] the grounds for the

---

[9]Maj. Op. at 9 n.19; *Davis*, 956 S.W.2d at 559.

ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). We have held that a timely objection is one that is made as soon as the need for one becomes apparent.[10] However, the record must *also* show that the trial court "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." *Id.* at (a)(2)(A), (B). Thus, regardless of whether Judge Cox reconsidered the motion to suppress and, in doing so, made a ruling on the merits, the plain language of the rule *also* requires that the complainant make a timely and specific objection. *See* Maj. Op. at 15-17; Tex. R. App. P. 33.1(a)(1), (2).

In holding that Appellant's motion to set aside was timely, the majority distinguishes *Janecka* and focuses almost exclusively on explaining why Appellant should not have been required to object at the suppression hearing.[11] Maj. Op. at 2, 12-20. The majority also cites *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) and *Garza v. State*, 126 S.W.3d 79, 83 (Tex. Crim. App. 2004), to explain why Appellant's motion was timely. Maj. Op. at 12. Based on the majority's reliance on

---

[10]Maj. Op. at 12; *Aguilar v. State*, 26 S.W.3d 901, 905-06 (Tex. Crim. App. 2000); *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991); *accord Janecka v. State*, 823 S.W.2d 232, 244 (Tex. Crim. App. 1990) (op. on reh'g) (requiring an objection at the time of appointment or "at the earliest feasible opportunity thereafter").

[11]*Lackey v. State*, PD-1621-10, slip op. at 2 (Tex. Crim. App. 2012) (Keller, P.J., concurring) (stating that Judge Keller would have held that Appellant was not required to object at the December 2 suppression hearing).

*Young*, 137 S.W.3d at 70, and *Garza*, 126 S.W.3d at 83, we are left to assume that the objectionable event occurred before Appellant could have reasonably foreseen it and that, because this was a bench trial, timeliness was not "quite as crucial." Maj. Op. at 12.

While I do not disagree with either authority, the combined weight of those authorities does not vitiate this Court's holding in *Janecka* that, if an objection cannot be made at the time of the error, an objection is still required "at the earliest feasible opportunity." *Janecka*, 823 S.W.2d at 244. Nor can the majority's holding withstand the weight of its own assertion that an objection or complaint is not required until the basis for relief has become apparent. Maj. Op. at 14. Moreover, the majority ignores the fact that *Young* had nothing to do with judicial qualifications or authority, and is distinguishable. Instead, *Young* was specifically about preserving error in a mistrial situation. *Young*, 137 S.W.3d at 70. One passage is particularly relevant to this point:

> We recognize the potential for abuse of a rule allowing a motion for mistrial without a preceding objection or request for instruction to disregard. If a party delays motion for mistrial, and by failing to object allows for the introduction of further objectionable testimony or comments and greater accumulation of harm, the party could no more rely on the untimely motion for mistrial than on an untimely objection. This appellant's motion for mistrial was not so delayed.

*Id.* The Court did state that "[i]t is not possible to make a timely objection to an unforeseeable occurrence, and an objection after an event occurs cannot fulfill the purpose of the objection, which is to prevent the occurrence of the event." *Id.* Citing *Young* in this case is problematic because *Young* stands for the proposition that no

objection is needed if the occurrence was unforeseeable, which the majority appears to claim, but then the majority decides that Appellant's after-the-fact objection preserved his claim. If this was truly an unforeseeable event, then why discuss the specificity or timeliness of Appellant's objection? Thus, it is evident that *Young* is distinguishable and was not meant to apply to a situation like this.

Nonetheless, giving the majority the benefit of the doubt that *Young* is applicable here and that *Janecka* is distinguishable, I agree with the majority that our rules of procedural default still require an objection as soon as the need for one becomes apparent. Maj. Op. at 14; *Hollins*, 805 S.W.2d at 476. Although cited by the majority in its analysis, the rule requiring a complaint or objection when the need for one becomes apparent seems to have winked out of existence when the majority reached the conclusion that Appellant preserved his claim. Maj. Op. at 19-20. Instead, we are told that Appellant received no form of notification prior to the suppression hearing held on December 2 and that "[w]e are loathe to require the appellant to make . . . a blind objection in order to preserve error for appeal, even in the name of judicial economy." Maj. Op. at 14. I agree, requiring any party to make a blind objection does not make sense. The problem with the position of the majority and Presiding Judge Keller is that a blind objection was not required here. Under the circumstances, I would hold that an objection was required at the earliest feasible opportunity[12] and that the earliest feasible

---

[12]*See Janecka*, 823 S.W.2d at 244.

opportunity to object is when the grounds become apparent.[13]

The majority decides that "[t]he appellant's [March] motion to set aside Skotnik's orders . . . was his first opportunity to obtain a ruling from" a qualified judge. Maj. Op. at 15. I disagree. Just because the hearing with Judge Cox in March followed the December 2 suppression hearing, it does not necessarily follow that the March hearing was Appellant's first opportunity to obtain a ruling. And, with all due respect to the majority, Appellant waited *four months* after the suppression hearing to complain about Skotnik's authority to preside.[14] I do not understand Judge Cox's actions in this case, but the fact remains that Skotnik had *already been appointed in this case* once.[15] Maj. Op. at 3. And, even if Appellant "had no apparent basis . . . to anticipate Skotnik's presence on the bench, much less to question [his] qualifications to be there," ninety-one days is sufficient time to investigate the qualifications of a person appointed as a visiting judge.

A more difficult case would have asked this Court to determine the exact moment

---

[13]*See Hollins*, 805 S.W.2d at 476.

[14]Measured from the initial appointment of Skotnik on October 28, 2009, Appellant waited one hundred twenty-six days before filing his motion to set aside Skotnik's orders. *See* Maj. Op. at 3. Such a complaint is hardly timely.

[15]The fact that Skotnik was appointed to preside by Judge Cox on October 28 should serve as some "notice" that Appellant should have investigated Skotnik's qualifications. And if not then, Appellant certainly should have been concerned when Skotnik mysteriously appeared in person on December 2. Moreover, the fact that Appellant was not properly notified either time Skotnik was appointed is not a reason to hold that Appellant need not have objected at all; instead it is a reason to hold that Appellant procedurally defaulted his claim about Skotnik's qualifications because he ignored the evidence plainly before him that something unusual was happening.

in time that Appellant should have known that Skotnik was not qualified to be appointed. Instead, we are faced with a much easier case where someone waited at least ninety-one days to object (but possibly up to one hundred twenty-six days). Because of the unusual circumstances here, I think there are two possibilities in this case. The first is that Appellant knew that Skotnik was not qualified to be appointed to the bench, but he was nonetheless convinced that, as a municipal court judge in the same city (Bonham City), Skotnik is a fair and honest man that would come to an equitable decision, at least until Appellant lost his motions to suppress. Alternatively, a reasonable attorney would have been put on notice that an investigation was in order based on the first October 28 appointment order, the fact that Skotnik appeared on the bench on December 2, and that a second appointment order was entered into the case file. Moreover, I think a reasonable investigation would have revealed that Skotnik was not qualified to be appointed. A rule allowing a party to discover reversible error but not requiring that he raise it until he knows whether his motion will be granted does not comport with this Court's modern view that surprise in litigation is something to be avoided. Such a rule also gives an undeserved windfall to the complainant as a reward for not acknowledging that reversible error has been made.

I believe that the majority has erred by affirming the relief granted by the court of appeals but refusing to address the merits of the State's claim. Today, we have either abdicated our responsibility to answer an important but unsettled question of state law or

we have created a legal fiction by granting relief on the basis that Appellant preserved a claim that our case law tells us need not be preserved.  Therefore, I respectfully dissent from the Court's resolution of this case.

Hervey, J.

Filed: March 7, 2012

Publish