

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. AP-76,665

### Ex parte ADRIAN CHAVEZ, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### HARRIS COUNTY

**KELLER, P.J., filed a dissenting opinion.**

I agree with the Court and with Judge Price that applicant's claim must fail. I dissent because I believe that the claim should be dismissed rather than denied on the merits. I also write separately to review the differences in the ways that we treat claims, depending on whether testimony is perjured or merely false, and whether the State knew or did not know of that fact.

### A. Procedural Question: Dismiss or Deny?

Under § 4, we cannot consider the merits of a subsequent habeas application unless one of two exceptions is satisfied.[1] The Court holds that applicant has satisfied the "unavailability"

---

[1] TEX. CODE CRIM. PROC. art. 11.07, § 4(a).

exception found in § 4(a)(1) because our decision in *Ex parte Chabot*[2] constitutes a new legal basis that did not exist when applicant's first habeas application was filed. I cannot agree.

For a "new legal basis" to satisfy the statutory unavailability exception, it must be true that "the current claims and issues have not been and could not have been presented previously in an original application . . . filed under this article because the . . . legal basis for the claim was unavailable on the date the applicant filed the previous application."[3] Applicant's claim fails under both the "have not been" and the "could not have been" aspects of the unavailability exception.

The legislature has specifically defined what constitutes an "unavailable" legal basis:

> For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the legal basis was not recognized by and *could not have been reasonably formulated from* a final decision of the United States Supreme Court, *a court of appeals of the United States*, or a court of appellate jurisdiction of this state on or before that date.[4]

The statute is not satisfied by the mere fact that we have never recognized the legal basis in question. Habeas applicants are responsible for knowing, not only about decisions from this Court and the United States Supreme Court, but also about the decisions of the Texas Supreme Court, Texas courts of appeals, and United States courts of appeals. If any of those courts have recognized the legal basis, or issued a decision from which the legal basis could have been reasonably formulated, then the unavailability exception is not met.[5]

---

[2] 300 S.W.3d 768 (Tex. Crim. App. 2009).

[3] Art. 11.07, § 4(a)(1).

[4] *Id.*, § 4(b) (emphasis added).

[5] *See also Ex parte Hood*, 211 S.W.3d 767, 775 (Tex. Crim. App. 2007), *disposition changed on reh'g*, 304 S.W.3d 397 (Tex. Crim. App. 2010). The statute does not make habeas applicants
(continued...)

*Sanders v. Sullivan* is a case from a United States court of appeals that is not exactly on point,

but I believe that applicant's claim could reasonably have been formulated from it.[6]  In that case, the

Second Circuit recognized that a due-process violation could be shown through the State's

*unknowing* use of perjured testimony:

> In our view however, it is indeed another matter when a credible recantation of the testimony in question would most likely change the outcome of the trial and a state leaves the conviction in place. In this case, we believe that allowing the conviction to stand violates due process.[7]

> * * *

> There is no logical reason to limit a due process violation to state action defined as prosecutorial knowledge of perjured testimony or even false testimony by witnesses with some affiliation with a government agency. Such a rule elevates form over substance. It has long been axiomatic that due process requires us "to observe that fundamental fairness essential to the very concept of justice."  It is simply intolerable in our view that under no circumstance will due process be violated if a state allows an innocent person to remain incarcerated on the basis of lies.[8]

*Sanders* was concerned with perjured testimony.  It did not hold that the State's unknowing

use of false, but not perjured, testimony could violate due process.  But neither did *Chabot*, which

also involved only perjured testimony, and which applicant relies on today as a "new legal basis."[9]

---

(...continued)
responsible for knowing the decision of state appellate courts from other states, e.g. the Supreme Court of California.

[6]  863 F.2d 218 (2d Cir. 1988).

[7]  *Id.* at 222 (citations omitted).

[8]  *Id.* at 224 (citation omitted).

[9]   *See Chabot*, 300 S.W.3d at 772 ("[W]e agree with the convicting court that the circumstances of the present case merit a finding that the applicant's due-process rights were violated, notwithstanding the absence of the State's knowledge of the perjured testimony at the time
(continued...)

*Chabot* was decided after applicant's first habeas application, but *Sanders* was decided before it. If, before his first application, applicant could have reasonably formulated a claim that due process could be violated by the State's unknowing use of false (not perjured) testimony, he fails to establish a new legal basis for his claim.[10] I believe that applicant could have formulated this claim from *Sanders*. And this belief is vindicated by the fact that he actually did formulate it: he raised it in his first application.

This brings us to the reason applicant's claim fails the other aspect of the unavailability exception: he has actually already presented the claim. The unavailability exception is met only by claims that "have not been and could not have been presented previously." Because applicant presented his claim previously, it does not fall within the unavailability exception.

By raising his claim in his original application, applicant gains an advantage compared to the litigant who fails to do so: there is always the possibility that this Court will reconsider a previous

---

(...continued)
of trial.").

[10] *See Ex parte Fontenot*, 3 S.W.3d 32 (Tex. Crim. App. 1999) (Even though cases of *Ex parte Jarrett*, 891 S.W.2d 935 (Tex. Crim. App.1994), and *Ex parte Wilson*, 956 S.W.2d 25 (Tex. Crim. App.1997), recognizing an ineffective-assistance claim arising out counsel's failure to tell a defendant of his right to file a PDR on his own, had not yet been decided when applicant's initial application was filed, the claim could have been reasonably formulated from statement in *Ayala v. State*, 633 S.W.2d 526 (Tex.Crim.App.1982), that an ineffective-assistance claim could arise if the defendant was deprived of the right to file a PDR because counsel volunteered to file one but failed to do so.).

application.[11]  Although reconsideration should be a rare event,[12] it ought to be available for a false-testimony claim that has been diligently pursued and would be meritorious under the Court's current standards.[13]  I agree, however, for the reasons given by the Court, that applicant cannot establish materiality, so a reconsideration of the previous application is not warranted.

It is worth pointing out that applicant essentially receives a merits review of his claim in all three of the opinions issued in this case: from the Court in denying his application, from Judge Price in concluding that applicant fails to satisfy § 4, and from me in concluding that reconsideration of applicant's original application is not warranted.  But how that review occurs is important because what this Court says here may impact future cases.[14]  We should not suggest that applicants who have failed to diligently pursue false-testimony claims have satisfied the legislative scheme set out in § 4.  The legislature made habeas applicants responsible for what happens in the federal appellate courts, not only for express holdings, but for legal theories that could be reasonably formulated from those holdings.  We must give effect to the statute as it is written.[15]

### B. False-Testimony Jurisprudence

---

[11] A motion for rehearing from an order denying relief in an Article 11.07 habeas proceeding is not allowed, but we may reconsider the case on our own initiative.  TEX. R. APP. P. 79.2(d); *see also Ex parte Moreno*, 245 S.W.3d 419, 427-29 (Tex. Crim. App. 2008).

[12] *See Moreno*, 245 S.W.3d at 427-29; *see also id.* at 431-32 (Keller, P.J., concurring).

[13] *Id.* at 429 (reconsideration warranted, in part, because defendant had not "slumbered on his rights").

[14] *See Ex parte Hood*, 304 S.W.3d 397, 409 (Tex. Crim. App. 2010) (subsequent writ holding guided by desire to treat the applicant the same as similarly situated applicants in prior cases).

[15] *Ex parte Smith*, 977 S.W.2d 610, 611 (Tex. Crim. App. 1998).

The general harm standard on habeas is that an applicant will be granted relief if he can show, by a preponderance of the evidence, that the error or misconduct affected the outcome of the proceedings.[16] It is perhaps time to recognize that the application of the general harm standard on habeas corpus will be an exceedingly rare event.

I have not found a case since *Fierro* in which the preponderance standard has been applied. It has become apparent from our caselaw that the habeas harm standard applies only to claims that could have been raised in an earlier proceeding.[17] The preponderance standard does not apply, for example, to ineffective-assistance-of-counsel claims, which usually cannot be raised before habeas. And the preponderance standard does not apply to a claim about the knowing use of perjury when the defendant had no opportunity before habeas to discover and challenge the perjury.[18] Applicants like these, who are not responsible for failing to raise their claims earlier, are generally allowed a more favorable harm standard than the preponderance standard.

In his dissent in *Fierro*, Judge Clinton anticipated the main reason the general habeas harm standard rarely comes into play—the narrowing of the cognizability of claims to exclude most claims that could have been raised in an earlier proceeding.[19] We now almost universally apply the rule that

---

[16] *Ex parte Dutchover*, 779 S.W.2d 76, 78 (Tex. Crim. App. 1989); *Ex parte Fierro*, 934 S.W.2d 370, 372 (Tex. Crim. App. 1996).

[17] *See Ex parte Ghahremani*, 332 S.W.3d 470, 481-83 (Tex. Crim. App. 2011); *Fierro*, 934 S.W.2d at 374 n. 10.

[18] *Ghahremani*, 332 S.W.3d at 481-83.

[19] *See Fierro*, 934 S.W.2d at 378 (Clinton, J., dissenting) (would limit cognizability of habeas review to claims that are "so fundamental to the fair operation of the system as to be 1) immune from procedural default, 2) not subject to a harm analysis, and 3) fully retroactive in application" and to those federal constitutional claims "recognized as of the time of trial but for
(continued...)

a claim is not cognizable on habeas corpus if it could have been raised at trial or on direct appeal.[20]

The upshot is that the general habeas harm standard applies only to a claim that could have been raised earlier, but if a claim could have been raised earlier, then it is most likely not cognizable anyway.[21]

The knowing use of perjured or false testimony is a rare exception to the rule against considering claims on habeas that could have been raised earlier. It is appropriate to make this exception because of the egregiousness of the State's conduct. When the State knowingly subverts the system, a defendant's negligence in failing to assert a claim should not by itself end the analysis. Instead, a belated claim of this sort is subject to the general habeas harm standard.[22]

But some confusion has arisen in our perjury/false-testimony jurisprudence because of the

---

(...continued)
which a record could not have been made, despite due diligence of the accused, in time to preserve the error for direct appeal").

[20] *Ex parte Jimenez*, 2012 Tex. Crim. App. LEXIS 637, at 34-35 (April 25, 2012) ("Ordinarily a convicted person may not raise an issue in a habeas proceeding if the applicant could have raised that issue on direct appeal."); *Ex parte Richardso*n, 201 S.W.3d 712, 713 (Tex. Crim. App. 2006) ("Nevertheless, the trend of this Court has been to draw stricter boundaries regarding what claims may be advanced on habeas. We have often stated that 'the Great Writ should not be used' to litigate matters 'which should have been raised on appeal' or at trial, and while we have not always consistently followed this maxim in the past, in recent years we have more closely adhered to it.").

[21] In most cases, the failure to raise a claim that could have been raised earlier can be made a part of an ineffective-assistance-of-counsel claim. The prejudice standard for ineffective-assistance claims—a reasonable probability that the result of the proceeding would have been different—is slightly more favorable to the defendant than the general habeas harm standard. *See Harrington v. Richter*, 131 S. Ct. 770, 792 (2011); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). But there will be rare cases in which an ineffective-assistance claim will be unavailable because the defendant represented himself at trial or on appeal.

[22] *See Fierro*, *passim*.

failure to properly distinguish the harm and materiality analyses. *Chabot* involved the unknowing use of perjured testimony. In that case, we applied the preponderance standard to determine that relief was warranted. We characterized our application of the preponderance standard as a standard of harm,[23] but it was not: Chabot could not have raised his claim earlier,[24] so the general habeas harm standard did not apply.[25] What we actually did was perform a materiality analysis. As it happens, the materiality standard for the unknowing use of perjured testimony is the same as the general habeas harm standard.[26] Though it appeared that we were simply applying the preponderance standard, we were in fact analyzing the perjured testimony for materiality.

That leaves at least two unanswered questions regarding claims about the unknowing use of false testimony. The first is whether a defendant may raise such a claim for the first time on habeas if he had an opportunity to raise the claim at a prior proceeding. I submit that when the State's use of perjured or false testimony is unknowing, a defendant may not raise his claim for the first time on habeas if he could have raised it at trial or on direct appeal. It is only the State's mendacity in the "knowing use" scenario that impels us to make an exception to the general rule against the cognizability of claims that could have been raised earlier.

The second unanswered question is whether the materiality standard that applies to the

---

[23] 300 S.W.3d at 771.

[24] *See id.* at 770 ("The applicant did not raise this due-process claim in his first application for habeas relief. Nor could he have brought the claim.").

[25] *See Ghahremani*, 332 S.W.3d at 481-83.

[26] *See Ex parte Napper*, 322 S.W.3d 202, 242 (Tex. Crim. App. 2010) ("*Chabot* does not appear to have taken into account the caveat in *Fierro*, and so *Chabot* simply stands for the proposition that the preponderance of the evidence standard is appropriate for the unknowing use of perjured testimony that the habeas applicant had no prior opportunity to discover.").

unknowing use of perjured testimony should also apply to the unknowing use of testimony that is merely false. We do not distinguish between perjured and false testimony in the "knowing use" context because the materiality standard depends upon the culpability of the state actor that uses the testimony, and a state actor who knowingly uses false testimony is just as culpable as one who knowingly uses perjured testimony. But in the "unknowing use" context, the culpability of the state actor is not the main issue, if it is an issue at all. When the testimony is perjured, a non-state actor has knowingly subverted the system, but when the testimony is merely false, the relevant actors may have been merely negligent or have no culpability at all. All we can say with certainty is that the showing of materiality for the unknowing use of testimony that is merely false must be at least as strong as the showing required for the unknowing use of perjured testimony,[27] but it is possible that, when perjury is absent, an even stronger showing is required.

Regardless of the answer to that second question, our cases have resulted in a "materiality ladder" in which claims can be arranged in order of how favorable the standard of materiality is to the defendant. Claims regarding the State's knowing use of perjured or false testimony occupy one end of the ladder with the most favorable standard of materiality—a reasonable possibility that the outcome would be different (not harmless beyond a reasonable doubt).[28] Claims regarding newly discovered evidence that demonstrates a convicted person's innocence occupy the other end of the ladder, with the least favorable standard of materiality—clear and convincing evidence that no

---

[27] *Id.* at 244.

[28] *United States v. Bagley*, 473 U.S. 667, 678-80, 679 n.9 (1985).

reasonable juror would have convicted the defendant in light of the new evidence.[29] The unknowing use of perjured or false testimony falls in between those endpoints, with a mid-level standard (or standards) of materiality.[30]

For these reasons, I disagree with some statements in the Court's opinion that suggest that the materiality standard for the "unknowing" use of false testimony is the "reasonable possibility" standard associated with "knowing" use. The materiality standards for knowing and unknowing use are in fact distinct. The following chart summarizes the main differences between the various types of claims that can involve perjured or false testimony:

| The Situation | Materiality Standard | Compared to Habeas Harm Standard | Forfeit if claim could have been but was not raised at trial or on direct appeal? |
| --- | --- | --- | --- |
| State's knowing use of perjured or false testimony | Reasonable possibility that the outcome would have been different (not harmless beyond a reasonable doubt) (*Bagley*) | Substantially more favorable to the defendant than the habeas harm standard | No, but if raised late, habeas harm standard applies |

---

[29] *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996).

[30] Although *Elizondo* was decided as an actual innocence case, it would also have satisfied the predicate, under today's standards, for an unknowing-use-of-perjured-testimony claim because the recantation of a testifying witness was at issue. *See id.* at 204 ("[L]ast year, the witness whose testimony was mainly responsible for convicting applicant recanted.").

| Ineffective assistance of counsel (for failing to discover or expose perjured or false testimony) | Reasonable probability that outcome would have been different (*Strickland*) | Slightly more favorable to the defendant than the habeas harm standard | Yes (but rare that claim could have been raised earlier) |
|---|---|---|---|
| State's unknowing use of perjured testimony | Preponderance of the evidence (more likely than not) that the outcome would have been different (*Chabot*) | Same as the habeas harm standard | Yes |
| State's unknowing use of false (but not perjured) testimony | At least preponderance but possibly heavier burden | At least as onerous to the defendant as the habeas harm standard but possibly more onerous | Yes |
| Newly discovered or newly available evidence that establishes the defendant's actual innocence | Clear and convincing evidence that no rational juror could find the defendant guilty beyond a reasonable doubt (*Elizondo*) | Substantially more onerous to the defendant than the habeas harm standard | Yes, if the evidence would not qualify as "newly discovered" or "newly available" |

With these comments, I agree with the Court's conclusion that applicant's claim must fail.

Because I would dismiss the application, rather than deny it, I respectfully dissent.

Filed: May 23, 2012
Publish