**Affirmed and Opinion Filed January 31, 2017**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01191-CR

**RODNEY EUGENE SMITH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1475894-M**

# MEMORANDUM OPINION

Before Justices Bridges, Evans, and Whitehill
Opinion by Justice Whitehill

A jury convicted appellant Rodney Eugene Smith of murder and assessed punishment at life imprisonment and a $1,000 fine. Appellant argues in three issues that (i) the trial judge was not impartial, (ii) the State made an improper closing argument during the trial's punishment phase, and (iii) his trial counsel was ineffective. We affirm.

## I. BACKGROUND

### A. Facts

Trial evidence supported the following facts:

Appellant and his girlfriend, Kimberly Truesdale, were acquaintances of the complainant in this case, Roderick Smith. (Appellant and the complainant share the last name of Smith, so we will refer to appellant as "appellant" and to the complainant as "Smith.")

In April 2014, appellant and Truesdale broke up after an argument. Because Smith was concerned for Truesdale's safety, he encouraged her to come stay at his apartment which she did. Smith and Truesdale then started dating.

On 29 May 2014, Truesdale talked to appellant on the phone and told him that she was dating Smith. Appellant became angry and said something like, "You tell that n_____, I am going to shoot him." Truesdale tried to calm him down, which seemed to happen.

Later that day, Smith was shot and killed in the hallway outside his apartment. Smith's next door neighbor heard two gunshots, looked out his window, and saw someone running and putting a gun inside his pocket. The neighbor then came out of his apartment and saw Smith lying in the hallway. The neighbor identified appellant as the man with the gun.

Another apartment complex resident testified that she heard gunshots, opened her apartment door, and saw a man coming down the stairs with a gun in his hand. She identified appellant as the man with the gun.

A medical examiner testified that Smith was killed by a gunshot wound to his face.

Appellant testified in his own defense to the following:

On 29 May 2014, he and Truesdale talked on the phone and agreed that they would get back together. He told Truesdale that he would tell Smith that they were back together, and later that day he went to Smith's apartment.

Appellant intended only to tell Smith that appellant and Truesdale were back together and to ask Smith not to contact her. But after appellant knocked on the door several times and started to leave, Smith came out of his apartment and charged at appellant with a knife.

Appellant testified essentially that he shot Smith once in self-defense and that he shot him a second time unintentionally when appellant's "arm hit the floor." The trial exhibits included a crime scene photo that showed a knife on the floor near Smith's body.

**B.      Procedural History**

Appellant was indicted for murder and pled not guilty. The jury was instructed on self-defense; and the verdict form submitted murder, manslaughter, and acquittal for the jury's consideration. The jury found appellant guilty of murder. After hearing additional evidence during the trial's punishment phase, the jury assessed punishment at life imprisonment and a $1,000 fine.

## II. ANALYSIS

**A.      Issue One:  Was appellant denied his due process right to an impartial judge?**

Appellant argues that the trial judge was biased against him. He relies specifically on the following alleged acts and omissions: (i) the judge prominently displayed Smith's photograph in the courtroom throughout the trial, (ii) the judge submitted an erroneous jury charge, (iii) the judge denied appellant his common law right to allocution, and (iv) the judge's pretrial ruling setting appellant's bond at $100,000.

**1.      Error Preservation and Applicable Law**

The State argues that appellant did not preserve error and thus forfeited review unless the record shows fundamental error. Appellant, for his part, does not contend that he preserved error by objection and argues that the trial judge's alleged bias amounted to fundamental error. For the following reasons, we conclude that objection was not necessary to preserve error but we disagree with appellant's merits arguments.

To preserve error, a party must ordinarily object and obtain a ruling. *See* TEX. R. APP. P. 33.1(a). However, some rights are not forfeited by mere inaction and can be lost only by affirmative waiver. *See Metts v. State*, No. PD-1054-15, 2016 WL 6091388, at *7 n.13 (Tex. Crim. App. Oct. 19, 2016). And there are some systemic obligations, requirements, and prohibitions that can be neither affirmatively waived nor forfeited by inaction. *Id*.

We have not addressed this error preservation issue in an opinion with precedential value. *See* TEX. R. APP. P. 47.7(a) (unpublished criminal opinions "have no precedential value"). Several of our sister courts of appeals have held that a complaint about a trial judge's partiality can be raised for the first time on appeal. *See Hernandez v. State*, 268 S.W.3d 176, 184 (Tex. App.—Corpus Christi 2008, no pet.) ("[F]ive courts of appeals have determined that the right to an impartial judge is an absolute requirement.") (footnote omitted). And here we will assume without deciding that no objection was necessary to preserve error because we ultimately reject appellant's first issue on the merits. *See Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006) (taking same approach).

Due process entitles a defendant to a neutral and detached hearing officer. *Id.* at 645. This means that the judge must not (i) have an actual bias against the defendant, (ii) have an interest in the outcome of the case, or (iii) assume a prosecutor's role. *Avilez v. State*, 333 S.W.3d 661, 673 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

Courts will not find due process violated absent a "clear showing of bias." *Brumit*, 206 S.W.3d at 645. Judicial conduct that is critical of, disapproving of, or even hostile to counsel, the parties, or their cases ordinarily will not support a bias challenge. *Hill v. State*, No. 05-14-01445-CR, 2016 WL 1554932, at *2 (Tex. App.—Dallas Apr. 14, 2016, no pet.) (mem. op., not designated for publication). Judicial rulings alone almost never suffice to show bias, but judicial remarks during a trial will support a challenge if they show a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.*; *Silverio v. State*, No. 05-14-01412-CR, 2015 WL 6756685, at *2 (Tex. App.—Dallas Nov. 4, 2015, no pet.) (mem. op., not designated for publication); *Charboneau v. State*, No. 05-13-00340-CR, 2014 WL 7476392, at *3 (Tex. App.—Dallas Dec. 30, 2014, no pet.) (mem. op., not designated for publication).

### 2. Application of the Law to the Facts

#### a. Displaying Complainant's Photograph

To support his bias claim, appellant relies most heavily on the judge's decision over objection to allow a photograph of Smith, taken when he was alive, to continue being displayed to the jury throughout the trial after it was admitted through the State's first witness, Smith's mother. According to appellant, this display showed that the judge was biased and denied appellant an impartial jury.

This exchange on the subject appears in the record:

| | |
|---|---|
| The State: | The State would offer State's Exhibit No. 1. Tendering to Defense Counsel. |
| Defendant: | No objections. |
| The State: | Permission to publish. |
| The Court: | You may. State's 1 is admitted. |
| Defendant: | Your Honor, however, we will object to it being displayed in perpetuity. |
| The Court: | Overruled. |

Questioning of the witness then resumed.

Later that day, after the jury was excused for lunch, appellant's counsel objected again:

| | |
|---|---|
| Defendant: | Your Honor, I am going to renew my objection to have his photograph posting [sic] up there. I believe it is prejudicial and it serves no evidentiary value. |
| The Court: | Any response from the State? |
| The State: | No, Your Honor. |
| The Court: | I will withhold ruling on that, and do it before we bring the jury back in. |

The judge did not rule before the jury returned, but a little while later, when the jury was again not present, the judge stated on the record that the renewed objection was overruled.

Appellant argues that the trial judge's ruling made him an "adversarial advocate" against appellant, depriving him of an impartial jury and a fair trial. He contends that the error was exacerbated by the fact that the trial judge overruled appellant's initial objection without even asking the State to respond to the objection.[1]

"[A] trial court's inherent power includes broad discretion over the conduct of its proceedings." *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 199 (Tex. Crim. App. 2003) (orig. proceeding) (footnote omitted). This discretion extends to courtroom displays. *See Alexander v. State*, 282 S.W.3d 143, 145 (Tex. App.—Texarkana 2009, pet. ref'd) ("[S]ymbolism is found in and around our courtrooms, and trial courts have the discretion to allow displays so long as they are not prejudicial to a litigant.").

In the only similar case that we found, the Austin Court of Appeals held that the trial court did not abuse its discretion by allowing the State to prop up on counsel table an eight-by-ten photograph of a homicide victim. *See Bothne v. State*, No. 03-05-00258-CR, 2008 WL 1911965, at *6 (Tex. App.—Austin Oct. 1, 2008, pet. ref'd) (mem. op., not designated for publication).[2] On the facts of this case, we reach the same result. The question is whether the trial court's ruling showed such deep-seated favoritism or antagonism as to make fair judgment impossible. *See, e.g.*, *Hill*, 2016 WL 1554932, at *2. We conclude that the trial judge's management of his courtroom regarding this aspect does not show deep-seated favoritism for the State or antagonism against appellant.[3]

---

[1] Appellant also asserts that "the trial court took it upon itself to make certain that the alleged victim's picture was always before the jurors . . . and did so initially without the State's having even asked for such a ruling." To the extent appellant suggests that the trial court ordered the photograph's display sua sponte, the record does not support him. Nothing in the record indicates that the manner of display was the court's idea. Based on the excerpts quoted above, we would infer that the State somehow positioned the photograph in a visible position after publishing it to the jury, prompting appellant's objection and the court's ruling thereon.

[2] In another case, the State apparently attempted to continuously display two enlarged photographs of a homicide victim's body, but the trial court sustained the defendant's objections and ordered the photographs to be put away. *Montelongo v. State*, 644 S.W.2d 710, 713–14 (Tex. Crim. App. [Panel Op.] 1980).

[3] We note that appellant did not ask the court to give similar treatment to a piece of evidence favorable to him, such as the photograph of the crime scene including the knife, or the knife itself.

### b. Other Alleged Examples of Bias

We next consider the other incidents that appellant urges as show judicial bias or partiality

### (i). Jury Charge

First, appellant argues that a jury charge error in this case shows bias. Specifically, he points to this paragraph in the charge:

> If you do not so believe [that appellant is guilty of murder], or if you have a reasonable doubt thereof, then you will acquit the defendant of murder and proceed to consider whether or not the defendant is guilty of the lesser included offense of manslaughter.

He contends the paragraph incorrectly instructed the jury that it could not consider the lesser included offense of manslaughter unless it first acquitted appellant of murder, when under law the jury was entitled to consider the manslaughter charge even if it could not agree on the murder charge.

But in *Barrios v. State*, the court of criminal appeals considered a jury charge essentially the same as this one and concluded that the charge as a whole adequately informed the jury that it could consider the lesser included offense even if it could not agree as to the greater offense. 283 S.W.3d 348, 352–53 (Tex. Crim. App. 2009). Appellant, however, asserts that the *Barrios* court suggested that using different, clearer language might be "a better practice." *Id*. at 353. Nevertheless, under *Barrios* the trial judge did not err by including the above-quoted paragraph in the charge. We thus conclude that the judge's use of this legally permissible charge, which he did without objection from appellant, does not show bias or partiality.

### (ii). Common Law Allocution

Next, appellant argues that the trial judge showed bias by not asking appellant if he wanted to exercise his "common law right to allocution." Allocution refers to a trial judge's inviting a criminal defendant to speak in mitigation of the sentence to be imposed. *See Eisen v.*

*State*, 40 S.W.3d 628, 631–32 (Tex. App.—Waco 2001, pet. ref'd). Texas has codified a version of the allocution right. *See* TEX. CODE CRIM. PROC. art. 42.07. Appellant acknowledges that the trial court complied with Article 42.07 by asking whether there was "any reason at law" why appellant should not be sentenced. But he argues that the trial court showed bias by not implementing a supposed common law right of allocution that would have permitted appellant to make a final plea for mercy or in mitigation of punishment. Appellant, however, did not object in the trial court and cites no authority that required the trial judge to implement the right of allocution in some other manner. We conclude that the trial judge's action, which appellant admits complied with the relevant statute, does not show bias or partiality.

### (iii). Bond Amount

Finally, appellant argues that the trial judge's setting appellant's bond amount at $100,000 shows bias. About four months before trial, the trial judge held a bond-related hearing. The court heard testimony from three witnesses and listened to a recording of appellant's telephone calls from jail. Appellant's witness said that she could raise $2,500 to post a bond for appellant. But an investigator testified that a woman contacted him and told him that her boyfriend (i) was appellant's cellmate and (ii) had heard appellant make a threat on a witness's life. And Truesdale testified that appellant had made threats to or "been physical" with her in the past, and that she was concerned for her safety if appellant were released. The State then asked the court to either not to set bond or set it at $500,000. The court, however, set bond at $100,000.

Appellant argues that the court's bond ruling shows bias because (i) the State argued that the evidence showed appellant while in jail had threatened a witness's life, but (ii) the evidence, particularly the telephone recordings, proved only that appellant said that someone had told the district attorney that appellant had threatened a witness. Appellant thus infers that the ruling

–8–

must have been based on the State's incorrect characterization of the evidence, and he contends that the trial judge's acceptance of the State's characterization is so egregiously wrong as to demonstrate bias.

The record, however, does not support appellant's argument. The trial judge did not say why he set bond at $100,000, so the record does not show that he accepted the State's characterization of the evidence. The judge was entitled to consider several factors in setting the bond amount, including the offense's nature and the community's safety. *See* TEX. CODE CRIM. PROC. art. 17.15(1), (5). The offense's seriousness supported a high bond. Moreover, Truesdale testified at the bond hearing that appellant had either threatened her or "been physical" with her in the past, and that she was worried about her safety if appellant were released. We conclude the trial judge's bond ruling does not show bias or partiality.

### (iv). Conclusion

Finally, even considering all of the matters raised by appellant cumulatively, we conclude that they do not show a deep-seated favoritism or antagonism that would make fair judgment impossible. Accordingly, we overrule appellant's first issue.

**B.    Issue Two:    Did the State make an improper closing argument during the punishment phase?**

Appellant's second issue argues that the State made an improper closing argument during the punishment phase. Specifically, appellant complains about the italicized sentence in this passage:

> This charge talks about parole law. What I want to challenge you, don't let someone else in parole decide how long you think Rodney Smith should be in the penitentiary. You determine that. You determine how long he should be there. *You put him there, so as long as you and the rest of the community in Dallas County is safe.* [sic]
>
> I urge you, start on the high end and think about everything that Rodney Smith has done to make you move toward the lower end. Thank you.

Appellant did not object to the argument.

"To preserve an improper jury argument complaint, the defendant must: (1) object; (2) request an instruction to disregard; and (3) move for mistrial." *Owen v. State*, No. 05-14-00349-CR, 2015 WL 294681, at *1 (Tex. App.—Dallas Jan. 22, 2015, no pet.) (not designated for publication) (citing *Harris v. State*, 784 S.W.2d 5, 12 n.4 (Tex. Crim. App. 1989)). "Even if the argument is egregious and an instruction to disregard would not cure the harm caused by the improper argument, the error is not preserved if the defendant did not object." *Id.*

Appellant did not object, so the alleged error was not preserved. Accordingly, we overrule appellant's second issue.

**C.    Issue Three:   Was appellant's counsel ineffective?**

Appellant's third issue argues that he received ineffective assistance of counsel because trial counsel failed to: (i) "pull the sting" by preemptively admitting evidence of appellant's prior misdemeanor conviction for assaulting a female victim, instead allowing the State to introduce that evidence, (ii) object to the jury charge for failing to clearly explain that the jury could convict appellant of manslaughter without first acquitting him of the greater offense of murder, and (iii) object to the State's closing argument at punishment quoted in this opinion's preceding section. We disagree with appellant's arguments in this direct appeal because (i) trial counsel has not had an opportunity to explain his actions and (ii) the record does not demonstrate conduct so outrageous that no competent counsel would have engaged in it.

"For a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (footnote omitted). The claim must be firmly founded in the record. *Id.* at 592–93.

"Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." *Id.* (internal quotations and footnote omitted). Trial counsel

should ordinarily be given a chance to explain his or her actions before being denounced as ineffective. *Id.* at 593. "If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Id.* (internal quotations and footnote omitted).

Appellant filed a new trial motion and an amended new trial motion. Although the amended motion raised ineffective assistance as a ground, it did not assert any of the three above-listed failures as a basis for the ground. Moreover, the record does not indicate that a hearing was held on the amended motion.

Because trial counsel was not given an opportunity to explain his actions, the question is whether the record shows that counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See id.* We conclude that it does not.

As to the first alleged error, appellant states that his trial counsel preemptively introduced evidence of appellant's prior theft, controlled substance possession, and burglary convictions and argues that counsel acted unreasonably by not using the same tactic regarding appellant's assault conviction. But the record is silent as to counsel's thought processes. There may have been some strategic reason for counsel's decision, and we cannot on this record conclude his decision was so outrageous that no competent attorney would have made it.

As to the next alleged error, we have already noted that the jury charge was permitted by the court of criminal appeals' decision in *Barrios v. State*, 283 S.W.3d 348 (Tex. Crim. App. 2009). We cannot conclude that counsel's failure to object to a charge that the court of criminal appeals permits is so outrageous that no competent attorney would have made that decision.

Finally, the decision whether to object to closing argument is inherently one of trial strategy. *See Hubbard v. State*, 770 S.W.2d 31, 45 (Tex. App.—Dallas 1989, pet. ref'd) ("The decision whether to object to particular statements in closing argument is frequently a matter of

–11–

trial strategy."). We conclude that counsel's failure to object to the State's closing argument quoted above is not so outrageous that no competent attorney would have made that decision because counsel could reasonably have concluded that objection would have drawn more attention to the State's argument.

Because the record does not establish that counsel was ineffective under the rigorous standard applicable in this direct appeal, we do not address whether the alleged errors caused prejudice to appellant. Accordingly, we overrule appellant's third issue.

### III. CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
151191F.U05

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RODNEY EUGENE SMITH, Appellant

No. 05-15-01191-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1475894-M.
Opinion delivered by Justice Whitehill.
Justices Bridges and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 31, 2017.