

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-94,237-01

## EX PARTE MICHAEL DAVID LEWIS, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS CAUSE NO. CR30418-A IN THE 238TH DISTRICT COURT FROM MIDLAND COUNTY

**RICHARDSON, J., filed a concurring opinion in which WALKER, J., joined.**

### CONCURRING OPINION

I join the Court's opinion and write separately to further describe how "utterly bonkers" this case is.[1] In this case and a number of other cases, the prosecutor was simultaneously dual-employed as a prosecutor for the district attorney and law clerk for the

---

[1] Fifth Circuit Judge Don Willett aptly described the Ralph Petty dual-employment situation in another case in the context of a federal § 1983 suit: "What allegedly happened here (and in hundreds of other criminal cases in Midland County) is utterly bonkers: the presiding judge employed a member of the prosecution team as a right-hand advisor." *Wilson v. Midland County, Texas*, 89 F.4th 446, 459 (5th Cir. 2023) (pending rehearing en banc. 92 F.4th 1150).

Because of the palpable impropriety, I previously joined Judge Newell in dissent against filing and setting this case, arguing that it was unnecessary to do so and that the Court should grant relief. *Ex parte Lewis*, No. WR-94,237-01, 2023 WL 4094772 (Tex. Crim. App. June 21, 2023) (Newell, J., dissenting).

1

judge presiding over the case. Adding to the impropriety, this relationship remained undisclosed to Applicant and his trial counsel. Our adversarial system of law before an impartial judge malfunctioned. The barrier to prevent ex parte communications between the prosecutor and the neutral judge vanished (unknown to the defense). This situation leaves "lasting stains on a system of justice" that will take years to restore.[2]

The State agrees that Applicant is entitled to a new, untainted trial. And the Court correctly grants one. As we have previously found, Weldon Ralph Petty Jr., a former Midland County prosecutor, was concurrently working as a law clerk for several judges out of Midland County.[3] Petty worked for the Midland District Attorney's Office from 2002-2019.[4] From 2002-2018, while Petty was employed as an assistant district attorney,

---

[2] One looks to Robert H. Jackson—a person who served as Unites States Attorney General, Chief Prosecutor of the Nuremberg trials, and Justice of the Supreme Court—for guidance on procedural due process:

> Only the untaught layman or the charlatan lawyer can answer that procedures matter not. Procedural fairness and regularity are of the indispensable essence of liberty. . . . Let it not be overlooked that due process of law is not for the sole benefit of an accused. It is the best insurance for the Government itself against those blunders which leave lasting stains on a system of justice but which are bound to occur on ex parte consideration.

*Shaughnessy v. United States, ex rel. Mezei*, 345 U.S. 206, 224–25 (1953) (Jackson, J., dissenting).

[3] *Ex parte Young*, No. WR-65,137-05, 2021 WL 4302528 (Tex. Crim. App. Sept. 22, 2021) (not designated for publication).

[4] The Supreme Court of Texas accepted Petty's resignation from the bar in lieu of discipline on April 13, 2021.

the judges collectively paid Petty at least $132,900. Judge John Hyde of the 238th District Court authorized Petty to be paid at least $64,100 for legal work.[5]

Petty served as a prosecutor on Applicant's capital murder case. He did not serve as the trial prosecutor in the actual trial. Nor did he do any post-conviction work for Judge Hyde on the case. But, as demonstrated below, the interwoven dual employment of Petty during the course of Applicant's prosecution violated due process of law:

Timeline of Petty's prosecution activities

- March 14, 2005    Applicant is indicted.

- April 22, 2005    *Petty solely represents the State in a pre-trial conference.*

- May 4, 2005    *Petty files the State's response to Applicant's motion in limine.*

- May 20-23, 2005    *Petty solely examines witnesses and solely presents argument against Applicant's motion to suppress. (Judge Hyde denied the motion to suppress).*

- May 23, 2005    *Petty moves for leave to file an amended indictment. Judge Hyde also hears Applicant's motion to quash. Petty presents argument. (Judge Hyde granted in part and denied in part Applicant's motion).*

- August 4, 2005    *Petty appears and speaks for the State at the final pre-trial conference.*

- August 22-26, 2005    Applicant's jury selection and trial take place.

- September 2, 2005    Applicant is sentenced.

Petty's paid legal work for Judge Hyde during Applicant's prosecution

---

[5] *Ex parte Young*, 2021 WL 4302528, at *3 n.2.

Applicant's "Motion for the Court of Criminal Appeals to take judicial notice of records from Midland County pay records for RE: Weldon Ralph Petty" filed in our Court on November 1, 2023, reveal numerous invoices filed by Petty. During Applicant's prosecution from March 14 (indictment)–September 2, 2005 (sentencing), Petty was issued eight separate times for work done in the 238th District Court under Judge Hyde.

| Date Legal Work Performed | Amount Invoiced | Post Conviction Case Worked | PDF Page Number of Motion |
|---|---|---|---|
| • March 23, 2005 | $600 | Mark Adam Lovell CR 26,609-A 238th District Court | p. 127 |
| • April 28, 2005 | $400 | Orlando Temple CR 27,722-A 238th District Court | p. 126 |
| • May 2, 2005 | $400 | Curtis Joe Reynolds CR 29,765-A 238th District Court | p. 125 |
| • June 22, 2005 | $400 | Alejandro Martinez CR 29,312-B 238th District Court | p. 124 |
| • June 29, 2005 | $400 | Derrick Andrea Price CR 20,335-A 238th District Court | p. 122 |
| • July 5, 2005 | $400 | Norman Young CR 26,746-C 238th District Court | p. 121 |
| • August 9, 2005 | $400 | Cedric Williams CR 28,656-A 238th District Court | p. 119 |
| • August 31, 2005 | $400 | Orlando Williams CR 27,722-B, A 238th District Court | p. 118 |

These eight invoices approved by Judge Hyde for work performed by Petty during Applicant's prosecution timeline totaled $3,400.[6] These payments reveal a routine work stream between Petty for Judge Hyde on post-conviction writs that occurred during Applicant's prosecution. This created numerous ex parte contacts which occurred in stealth.

The consistent payments from the judges to Petty during Petty's tenure as a prosecutor, disclose that Petty was a trusted law clerk. Neither Petty nor Judge Hyde should have been involved in this case, because Petty was "of counsel" for the State on *this case* and was "of counsel" for the judge while the judge was presiding over *this case*.[7] Petty's direct access to Judge Hyde in his role as the judge's legal advisor while maintaining an active conflict of interest raises suspicions of inappropriate influence behind closed doors.

Even if we assume no inappropriate communications occurred about the instant case (we will likely never know),[8] "the appearance of impropriety" remains

---

[6] These invoices are documented as part of the record These are also corroborated by the Midland County Auditor's Office in their accounts payable report. *See* pp. 14, 21, 27–30 of the motion.

[7] *Cf.* TEX. CODE CRIM. PROC. art. 2.08(a) ("District and county attorneys shall not be of counsel adversely to the State in any case, in any court, nor shall they, after they cease to be such officers, be of counsel adversely to the State in any case in which they have been of counsel for the State."); TEX. R. CIV. PROC. 18b(b)(1) & (5) ("A judge must recuse in any proceeding in which: (1) the judge's impartiality might reasonably be questioned; . . . (5)the judge participated as counsel, adviser, or material witness in the matter in  controversy, or expressed an opinion concerning the merits of it, while acting as an attorney in government service.").

[8] The Honorable John Hyde passed away in 2012. And Ralph Petty has signaled that he will assert his 5th Amendment right to not incriminate himself. *See Ex parte Young*, 2021 WL 4302528, at *3-4.

"palpable."[9] Recusal should have been required because the relationship between Petty and Judge Hyde.[10] The "touchstone of due process" is "fundamental fairness." *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice."[11] *Lisenba v. California*, 314 U.S. 219, 236 (1941). "[J]ustice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). Here, it did not do that.

It is immaterial whether Petty worked for Judge Hyde during Applicant's post-conviction proceedings, because the issue is that Petty worked as a judicial clerk for the trial judge *while* prosecuting Applicant. The dual-natured employment irredeemably tainted Applicant's right to a fair trial.[12]

---

[9] *Metts v. State*, 510 S.W.3d 1, 8 (Tex. Crim. App. 2016).

[10] *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 872 (2009) ("[T]here are objective standards that require recusal when 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'") (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

[11] As the Supreme Court has clarified:

For all its consequence, "due process" has never been, and perhaps can never be precisely defined. "Unlike some legal rules," this Court has said, *due process* "*is not a technical conception* with a fixed concept unrelated to time, place and circumstances." Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty.

*Lassiter v. Dept. of Soc. Serv. of Durham Cty.*, 452 U.S. 18, 25 (1981) (internal citation removed; emphasis added).

[12] This significantly differs from scenarios where a prosecutor actively involved in a case is subsequently hired as a law clerk to a judge who then takes concrete steps to wall off the now-former-prosecutor from that same case. *See e.g.*, *United States v. Martinez*, 446 F.3d 878 (8th Cir. 2006) (finding recusal not required where a judicial law clerk was assigned to work exclusively

6

The Court does not discount the gravity of the depraved acts Applicant was tried for. Nevertheless, the Court is obliged to uphold the law. The legally correct course of action in this situation has already been demonstrated by our Court in another Ralph Petty case—grant relief: "Judicial and prosecutorial misconduct—in the form of an undisclosed employment relationship between the trial judge and the prosecutor appearing before him—tainted Applicant's entire proceedings from the outset. As a result, little confidence can be placed in the fairness of the proceedings or the outcome of Applicant's trial. . . . Applicant was deprived of his due process rights to a fair trial and an impartial judge."[13]

Filed: May 8, 2024

Publish

---

on the civil docket and screened from the criminal docket after previously serving as a prosecutor on a case before her employing judge).

[13] *Ex parte Young*, 2021 WL 4302528, at *5.