**Anthony Austin METTS, Appellant**

v.

**The STATE of Texas**

**NOS. PD-1054-15 & PD-1055-15**

Court of Criminal Appeals of Texas.

DELIVERED October 19, 2016

Rehearing Denied January 11, 2017

Josh Schaffer, for Anthony Austin Metts.

Lisa McMinn, Carolyn D. Thurmond, for State of Texas.

## OPINION

Yeary, J., delivered the opinion of the Court in which Meyers, Keasler, Hervey, Alcala, Richardson, and Newell, JJ., joined.

In 2004, Appellant pled guilty to two charges of sexual assault of a child and was placed on deferred adjudication community supervision for each offense. Before Appellant entered his plea, he and a prosecutor representing the State appeared at a status hearing to waive Appellant's right to a jury trial. The prosecutor later became a district court judge and, nine years later, she adjudicated Appellant guilty and sentenced him to ten years of confinement for each offense. Appellant appealed to the Eleventh Court of Appeals, contending for the first time that the trial court's judgments were void because the judge was constitutionally and statutorily disqualified from presiding over cases in which she had previously acted as counsel for the State. *Metts v. State*, Nos. 11–13–00203–CR, 2015 WL 4433603 at *1 (Tex. App.–Eastland 2015) (not designated for publication). The court of appeals rejected Appellant's assertions and affirmed the trial court's judgments. *Id.* at *3. We granted Appellant's petition for discretionary review to consider his contention that the court of appeals erred by holding that the trial judge's prior involvement in the cases as a prosecutor did not render her constitutionally and statutorily disqualified from adjudicating Appellant's guilt. We will vacate the judgments of the court of appeals and remand the causes for further proceedings consistent with this opinion.

## BACKGROUND

By separate indictments, each returned on January 15, 2004, Appellant was charged with two instances of sexual assault of a child.[1] The State and Appellant subsequently entered into a plea agreement in which Appellant would plead guilty to both offenses in exchange for a recommendation of deferred adjudication and a ten-year community supervision period for each offense. With the consent of the State, Appellant waived a jury trial at a status hearing on March 19, 2004, during which trial counsel announced to the trial court that Appellant had "accepted the plea bargain." At the March 19th status hearing, Robin Darr, then the Chief Prosecutor of the 385th District Court, appeared on behalf of the State and signed the form documenting the State's consent to Appellant's jury trial waiver. Robin Darr's initials were listed on the criminal docket sheet for the hearing, and the court reporter included her on the reporter's record as "counsel for the State." The proceeding lasted approximately three minutes, and Darr's only comment on the record was, "Let me give you a waiver to sign," directed to Appellant, so that he could waive the right to a jury trial. Darr had not previously represented the State in relation to Appellant's cases, as re-

---

1. Appellant is alleged in the respective indictments to have sexually assaulted J.B. on August 1, 2002, and H.W. on September 1, 2002. Each was a child younger than seventeen years old and not Appellant's spouse. Tex. Penal Code § 22.011.

flected either on the docket sheet detailing Appellant's indictments or in any other pretrial motions.[2] She did not appear as a prosecutor in Appellant's cases again.

Appellant pled guilty the following week. Judge Willie DuBose of the 385th District Court accepted the plea agreement and deferred adjudication of guilt, placing Appellant on community supervision for a period of ten years for each offense. Darr was not present and was not listed on any other documents from Appellant's cases, except for the jury waiver form. Several months later, Judge DuBose retired, and Robin Darr was elected the new presiding judge of the 385th District Court.

On October 13, 2005, Appellant filed an application for habeas corpus relief, alleging ineffective assistance of counsel during the earlier plea proceedings. The habeas application happened to be taken up in the 385th District Court, and now-Judge Robin Darr denied relief. Appellant appealed the decision, making no mention of Judge Darr's past participation in the cases and without any contention that Judge Darr was disqualified. The court of appeals upheld Judge Darr's decision. Judge Darr continued to rule on subsequent motions related to Appellant's community supervision from 2006 to 2013, and Appellant never objected or raised questions related to the jury waiver form or status hearing from 2004.[3]

Nine years into the community supervision period, the State moved to revoke Appellant's community supervision and adjudicate guilt, alleging that he had committed twenty-five probation violations. Appellant answered true to two allegations that he had been convicted of misdemeanor offenses while on community supervision, and he answered not true to the remaining allegations. These included allegations that Appellant used alcohol, tampered with his GPS monitoring system, visited prohibited places, failed to provide proof of work, and violated curfew on multiple occasions. On May 30, 2013, Judge Darr adjudicated Appellant guilty for each offense, revoked his community supervision, and sentenced him to ten years in prison for each offense.

On appeal, Appellant contended that the judgments were void because Judge Darr was constitutionally and statutorily disqualified from presiding over the adjudication hearing.[4] Appellant had not objected at the time of the adjudication hearing or in any of the previous proceedings before the trial court, but raised the issue for the first time in the court of appeals and asserted that the disqualification occurred "as a matter of law." The State countered that Judge Darr's conduct as a prosecutor amounted to a mere "perfunctory act," a ministerial function failing to rise to the level of the active participation that Appel-

---

**2.** Assistant District Attorney Elizabeth Byer represented the State during the grand jury proceedings, pretrial motions before the March 19th status hearing, and at the March 26th plea hearing. Byer also represented the State with Assistant District Attorney Laura Nodolf in a number of motions related to the terms of Appellant's community supervision after 2004.

**3.** Specifically, Judge Darr approved Appellant's Motion for Transfer of Community Supervision and Waiver of Extradition on October 13, 2006, approved the State's Motion to Modify Community Supervision to impose

GPS monitoring on January 23, 2008, approved a Judgment Modifying Community Supervision on March 6, 2009, denied Appellant's Motion to Modify Terms of Probation on August 11, 2010, and approved a request for a "Third Modification of Community Supervision By Agreement" on May 10, 2013.

**4.** Specifically, Appellant relies upon Article V, Section 11 of the Texas Constitution and Article 30.01 of the Texas Code of Criminal Procedure. TEX. CONST. art. V, § 11; TEX. CODE CRIM. PROC. art. 30.01.

lant would have needed to demonstrate in order to disqualify a trial judge. The court of appeals agreed with the State, upholding the decision of the trial court. The court of appeals drew a distinction between perfunctory acts and active participation, and it concluded that Judge Darr's signature on the jury waiver form designated nothing more than a perfunctory act that was not sufficient to trigger disqualification. Along the way, the court assumed, without deciding, that Appellant could raise the disqualification issue for the first time on appeal, noting that the State had not provided any authority to suggest otherwise.

### THE LAW

The Texas Constitution and the Texas Code of Criminal Procedure both require the disqualification of a judge who has previously participated as counsel for the State in a pending matter. Constitutionally, a judge is disqualified if he has "been counsel in the case." TEX. CONST. art. V, § 11.[5] In addition, the Legislature has precluded a judge from presiding over "any case where . . . he has been of counsel for the State or the accused[.]" TEX. CODE CRIM. PROC. art. § 30.01.

In keeping with these provisions, we have held that "[i]t is a denial of a person's right to judicial impartiality to allow the state's attorney to later become judge in the same case." *Ex parte Miller*, 696 S.W.2d 908, 910 (Tex. Crim. App. 1985) (*overruled on other grounds by Ex parte Richardson*, 201 S.W.3d 712, 714 (Tex. Crim. App. 2006)). These provisions are mandatory and, we have said, they "must

be observed." *Hathorne v. State*, 459 S.W.2d 826, 829 (Tex. Crim. App. 1970) (*citing Pennington v. State*, 169 Tex.Crim. 183, 332 S.W.2d 569, 570 (1960)). We have long held that a judgment by a disqualified judge is a "nullity." *Whitehead v. State*, 273 S.W.3d 285, 286 n.3 (Tex. Crim. App. 2008); *Gresham v. State*, 66 S.W. 845, 43 Tex.Crim. 466, 467 (1902); *January v. State*, 38 S.W. 179, 36 Tex.Crim. 488, 491 (1896). Furthermore, we have expressly held that a disqualified judge may not revoke a defendant's probation. *Ex parte McDonald*, 469 S.W.2d 173, 174 (Tex. Crim. App. 1971).

■■■ However, the Court has also recognized that not every action taken by a prosecutor who later becomes a judge will merit disqualification. We have construed the disqualification provisions to mean that the judge must have "investigated, advised or participated" as counsel in the case. *See Rodriguez v. State*, 489 S.W.2d 121, 123 (Tex. Crim. App. 1972) ("It is not shown that the trial judge . . . actually investigated, advised or participated in the case in any way; it is therefore not shown that he 'acted as counsel in the case' as contemplated by the constitutional and statutory provisions relied upon."). Stated another way, the judge's involvement must have arisen to a level of active participation. *See Gamez v. State*, 737 S.W.2d 315, 319 (Tex. Crim. App. 1987) (a judge will be disqualified if he "actively participated in the preparation of the case against the defendant"); *Holifield v. State*, 538 S.W.2d 123, 125 (Tex. Crim. App. 1976) (the disqualification provisions require the judge to "actually

---

**5.** Recently the United States Supreme Court reiterated that federal due process compels the recusal of a judge when his prior participation as a prosecutor in the case creates a likelihood of bias that is too high to be constitutionally tolerated. *See Williams v. Pennsylvania*, —— U.S. ——, 136 S.Ct. 1899, 1905, 195 L.Ed.2d 132 (2016) ("[U]nder the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case."). We have no such question of federal constitutional law before us in this case.

have participated in the very case which is before him"). The burden is on the party seeking to disqualify the judge to make an "affirmative showing that the judge actually acted as counsel in the very case before him." *Miller*, 696 S.W.2d at 909; see also *Rodriguez*, 489 S.W.2d at 123 (a judge's past role as First Assistant District Attorney did not *per se* mean that he acted as counsel in a case from that period).

In *Miller*, we reviewed an adjudication of guilt in which the trial judge had previously participated in the defendant's case. 696 S.W.2d at 909. While serving as a prosecutor, the trial judge had signed "the application for jury waiver, the waiver of indictment and charge by information, the plea bargaining agreement, the agreed motion to modify probation, and the first motion to adjudicate guilt." *Id.* at 910. We held that these acts constituted "actual and active participation in the applicant's conviction." *Id.* Accordingly, the judge was constitutionally and statutorily disqualified, and his adjudication of guilt was rendered void. *Id.* We did not specify whether the active participation standard was satisfied by any one of the judge's actions taken individually or by the collective effect of the judge's acts altogether.[6]

In another instance, we held that a trial judge was disqualified when, as a prosecutor, he had previously written a letter to defense counsel stating that he would be recommending a life sentence for the defendant in his capacity as Chief of the Trial Division for the District Attorney's Office. *Lee v. State*, 555 S.W.2d 121, 125 (Tex. Crim. App. 1977). The trial judge had not been the prosecutor assigned to the defendant's case, had never appeared in the case, and evidently did not even remember writing the letter. *Id.* at 123. Nevertheless, the letter revealed that he had

"reviewed" the defendant's file, and we determined that his past involvement meant that he "had been of counsel for the State ... and that he was disqualified from presiding as judge in the instant trial." *Id.* at 125.

By contrast, we have held that a mere "perfunctory act" will fail to trigger the disqualification provisions. In *Gamez*, we determined that a trial judge was not disqualified when his name appeared, rubber stamped, on the State's announcement of ready for trial. 737 S.W.2d at 319–20. The trial judge had never made an appearance in the case and had never examined the State's files. The use of the judge's rubber stamped signature did not signify his active participation in the case.

**ANALYSIS**

■ Appellant invokes both the constitutional and statutory disqualification provisions to assert that Judge Darr was disqualified from hearing his case "as a matter of law." Accordingly, Appellant contends, the adjudication of guilt is a nullity, and the court of appeals erred in affirming the judgment. The court of appeals agreed with the State's argument that Judge Darr's minimal involvement in the case, limited to her signing the jury waiver form, does not rise to the level of active participation needed for constitutional or statutory disqualification. Instead, according to the State and the court of appeals, Judge Darr's signature was a mere perfunctory act that failed to make her "counsel in the case."

We disagree. In our view, Judge Darr acted as counsel for the State in Appellant's case, however briefly. Under Article 1.13 of the Texas Code of Criminal Procedure, it is necessary for "the attorney representing the State" to sign a written con-

---

6. The State contends that all of the judge's actions, collectively, formed the basis of our holding, but *Miller* does not expressly stand for this proposition. 696 S.W.2d at 910.

sent to Appellant's waiver of a jury trial. TEX. CODE CRIM. PROC. art. 1.13(a) (providing that a defendant may waive a jury trial only with the consent, "in writing, signed by" "the attorney representing the state"). If Judge Darr had not been acting as counsel in the case, her signature would presumably have never appeared on the jury waiver form. We acknowledge that Judge Darr's involvement appears to have been limited to the brief hearing described in the record, but that hearing was nonetheless an integral step toward the process that resulted in Appellant's deferred adjudication community supervision.

We have held a former prosecutor's participation in a case to be no more than a "perfunctory act" only once, in *Gamez*. 737 S.W.2d at 319. *Gamez* is distinguishable from this case in a number of ways. In *Gamez*, the trial judge never made an appearance in the case as a prosecutor. Here, Judge Darr appeared at Appellant's status hearing to represent the State on March 19th, 2004, and is listed in the court reporter's record as counsel for the State on that occasion. In *Gamez*, the use of the trial judge's rubber stamped signature required no active participation on the judge's behalf. In this case, Judge Darr personally signed the written document signifying the State's "consent and approval" to the jury waiver.[7] In *Gamez*, we determined that the trial judge never acted as "counsel in the case" at all. 737 S.W.2d at 319–20. The same cannot be said in the present case; Judge Darr must have acted as counsel in the case in order to consent to Appellant's waiver of a jury trial. *See* TEX. CODE CRIM. PROC. art. 1.13(a)

("the consent and approval of the attorney representing the state shall be in writing, signed by that attorney, and filed in the papers of the cause before the defendant enters the defendant's plea").

Judge Darr's actions are more akin to those of the trial judge in *Miller*, where, among other documents, the trial judge did sign a jury waiver form.[8] 696 S.W.2d at 910. The court of appeals found it significant that the judge's active participation in *Miller* included his "signing several forms," but we did not premise our holding in *Miller* on the quantity of documents handled by the judge. On the contrary, we noted that the level of active participation in *Miller* was even greater than that of the disqualified judge in *Lee*, in which the judge-to-be had prepared only one document. *Id.* We took note of the fact that the judge's signature appeared on the documents, and that "no other attorney's name [was] shown as a representative of the State" during those proceedings. *Id.* Similarly, while Elizabeth Byer and Laura Nodolf may have represented the State at other times throughout Appellant's lengthy case, only Judge Darr's name was shown as a representative of the State at the jury waiver hearing.

The other cases cited by the court of appeals are similarly distinguishable. For example, our holding in *Rodriguez* rested on showings that the trial judges had not participated in the respective cases at all. In *Rodriguez*, the judge was the First Assistant District Attorney at the time of the offense and filing of the complaint, but he did not personally take part in the prosecution of the defendant's case. 489

---

7. The court of appeals posited that there was no evidence in the record to prove whose handwriting actually appeared on the jury waiver form, but the State has acknowledged in its reply brief to this Court that Judge Darr did, in fact, sign the form.

8. We recognize that our decision in *Miller* has been overruled to the extent that we held there that disqualification can no longer be raised for the first time on habeas review. *See Ex parte Richardson*, 201 S.W.3d at 714. Our opinion on the merits of the case, however, remains intact.

S.W.2d at 123. Here, Judge Darr was not just another prosecutor who merely happened to work for the State at the time of Appellant's case. Judge Darr personally participated in a hearing, and she consented to the defendant's waiver of a right in doing so. This cleared the path for Appellant to obtain deferred adjudication.[9]

The State contends that in order to establish disqualification, a defendant must show that the prosecutor had an in-depth knowledge of the facts, or exercised some degree of discretion in her decision-making. Even accepting this as the appropriate standard, the decision whether or not to sign a jury waiver consent form is necessarily a function of prosecutorial discretion. The consent of the State to a trial without a jury may be withheld; no law compels the State to consent to a jury waiver. *See State ex rel. Turner v. McDonald*, 676 S.W.2d 371, 373 (Tex. Crim. App. 1984) ("[I]f the prosecutor believes that it is essential to the interest of justice that a particular accused be tried by a fair and impartial jury of his peers, our Legislature has provided a means for vindicating that interest [in the guise of Article 1.13(a)], and we hold nothing in our constitution is contravened thereby."); *see also Thompson v. State*, 226 S.W.2d 872, 154

Tex.Crim. 273, 274 (1950) (the State's written consent of a jury waiver is a prerequisite to a trial without a jury in a felony case). Judge Darr's signature and appearance at Appellant's status hearing demonstrates that she must have exercised discretion on behalf of the State in consenting to Appellant's jury waiver. Because Judge Darr stepped in as counsel at the hearing and signed the waiver form herself—even if, as the State implies, she was acting on the recommendation of another prosecutor who subjectively made the decision to consent to the jury waiver—the decision is legally attributable to her.[10] Acting as an official proxy is still acting as counsel in the case. As Appellant notes, Judge DuBose likely would not have accepted the jury waiver form had he believed that Judge Darr lacked the authority to execute the State's written consent and approval to Appellant's waiver.[11]

We acknowledge that Judge Darr was not the prosecutor who represented the State in the great majority of the proceedings related to Appellant's case. Nothing in the record indicates that Judge Darr and the Appellant even remembered each other from the original adjudicatory proceedings. Yet this Court has rejected the notion that for a trial judge to be disquali-

9. As a practical matter, a defendant must waive his right to a jury trial in order to obtain the benefit of deferred adjudication community supervision. A trial court may place a defendant on regular community supervision "after *conviction* or a plea of guilty or nolo contendere[.]" TEX. CODE. CRIM. PROC. art. 42.12 § 3(a) (emphasis supplied). Even after a defendant is convicted based upon a verdict of guilty from a jury, the trial court may still place him on regular probation. But the trial court may place a defendant on deferred adjudication probation only "after receiving [his] plea of guilty or nolo contendere[.]" TEX. CODE CRIM. PROC. art. 42.12 § 5(a). The trial court cannot "receive" a defendant's plea of guilty or nolo contendere unless and until the defendant has waived his right to have the jury receive his plea. And the defen-

dant cannot waive his right to a jury without the written "consent and approval" of the prosecutor. TEX. CODE CRIM. PROC. art. 1.13(a).

10. The jury waiver itself provides: "Comes now the State by and through her District Attorney and consents and agrees to the waiver of a jury herein and to the trial of this cause before the court." Judge Darr signed below this sentence, on a line entitled "Attorney for the State."

11. Judge DuBose also signed the jury waiver form, which states: "[I]t further appearing to the Court that the State has joined in the waiver of trial by jury, the Court approves the Waiver of Trial by Jury by said defendant."

fied, she must have been the prosecutor assigned to the case, or that the judge need even remember the role she played in the prosecution. *Lee*, 555 S.W.2d at 125; *see also Prince v. State*, 252 S.W.2d 945, 946, 158 Tex.Crim. 65 (1952) (if a judge "participated in *any manner* in the preparation or investigation of the case when he was Assistant County Attorney, he would be counsel for the State") (emphasis added). A judge need not have an "in-depth" knowledge of the facts before being disqualified, as the State suggests. We have previously construed the disqualification statute to act as a safeguard against not only judicial bias, but even the appearance of judicial bias. *Whitehead v. State*, 273 S.W.3d 285, 288 (Tex. Crim. App. 2008). Appellant was adjudicated guilty by a trial judge who, as a prosecutor, had personally executed the waiver necessary to facilitate Appellant's deferred adjudication process. Regardless of any actual bias harbored by Judge Darr, the appearance of impropriety is palpable.

It is important to note that when this Court has declared trial judges to be disqualified in the past, we have done so with the caveat that our holdings are not intended to cast personal aspersions on the judges. *See, e.g., Whitehead*, 273 S.W.3d at 289; *Lee*, 555 S.W.2d at 125, n.2; *Durham v. State*, 124 S.W. 932, 933, 58 Tex.Crim. 143 (1910). The same is true here. We do not mean to call into question the ethical judgment of Judge Darr, particularly since Appellant did not object at the trial court level to place Judge Darr on notice of the conflict. As we acknowledged over a century ago, judicial disqualification "makes no attack upon the good faith or integrity [of the trial judge] . . . and is rested solely on the ground that as a matter of law, under the facts, he was disqualified." *Durham*, 124 S.W. at 933, 58 Tex.Crim. at 145.

The court of appeals held that because Judge Darr had not investigated, advised, or participated in the case in any way, she was not disqualified. While the record does not suggest to what degree Judge Darr investigated Appellant or advised the State, the record does provide an affirmative showing that she actively participated in the case by executing the State's written consent and approval to Appellant's waiver of a jury trial, which allowed Appellant to receive deferred adjudication. Accordingly, the court of appeals was mistaken to conclude that Judge Darr was not disqualified from later presiding over Appellant's adjudication hearing.

## DISPOSITION

Having resolved Appellant's disqualification claim, we are left with a potential issue of procedural default. The State argued in its reply brief on direct appeal that, since Appellant failed to object when Judge Darr presided over his adjudication hearing, he has forfeited his right to raise the issue on appeal. The court of appeals avoided this issue, instead assuming, without deciding, that Appellant could bring a judicial disqualification claim for the first time on appeal. *Metts*, 2015 WL 4433603, at *1. Because the court of appeals rejected Appellant's claim on the merits, the State's procedural default contention became moot. The State continued to maintain in its reply brief on discretionary review in this Court that Appellant forfeited the disqualification issue. Our holding on the merits today has revived the forfeiture question.[12]

Appellant argues that this Court has already decided the question of whether disqualification can be forfeited through procedural default. It is true that we have

---

**12.** At oral argument, Appellant's counsel argued that we are not permitted to remand the

cause for the court of appeals to address the forfeiture question because the State did not

previously stated that a disqualification claim may be raised for the first time on appeal. *Whitehead*, 273 S.W.3d at 286 n.3; *Johnson v. State*, 869 S.W.2d 347, 348 (Tex. Crim. App. 1994). But we have also qualified this rule with the caveat that, under some circumstances, the claim may not be raised if no objection was made at trial. *See Richardson*, 201 S.W.3d at 714 (disqualification may not be raised for the first time in a post-conviction application for habeas corpus review). We have never explicitly decided under which *Marin* category the right to a non-disqualified judge should be classified.[13] This is an issue necessary for disposition of the case which the

court of appeals may now properly address, with additional briefing from the parties as the court of appeals may deem helpful.

## CONCLUSION

Accordingly, we vacate the judgment of the court of appeals and remand the causes to that court for further proceedings consistent with this opinion.

Keller, P.J., and Johnson, J., dissented.

---

file a cross-petition for discretionary review to bring that issue before us. In this, he is mistaken. As Professors Dix and Schmolesky have observed: "Beginning with *Wilson v. State*, [772 S.W.2d 118 (Tex. Crim. App. 1989),] the Court of Criminal Appeals has made clear that if the party prevailing in the court of appeals wishes to defend its victory on grounds rejected by the court of appeals, it must seek review of the intermediate court's rejection of those grounds." George E. Dix & John M. Schmolesky, 43B Texas Practice: Criminal Practice and Procedure § 57:37, at 683 (3d ed. 2011). We most recently reiterated this principle in *Blasdell v. State*, 470 S.W.3d 59, 62 n.4 (Tex. Crim. App. 2015). However, the court of appeals in this case did not *reject* a contention by the State that Appellant procedurally defaulted his claim. Instead, it assumed without deciding that his claim was not subject to procedural default, and then rejected his claim on the merits. Under these circumstances, it was not "necessary to final disposition of the appeal" for the court of appeals to decide the procedural default issue. Tex. R. App. P. 47.1. There is no adverse ruling of the court of appeals about which the State has any occasion to complain in a cross-petition for discretionary review. *See State v. Plambeck*, 182 S.W.3d 365, 367 n.10 (Tex. Crim. App. 2005) (explaining that a court is not required to address issues that become moot because of the resolution of other issues). But because we now reverse the court of appeals's holding on the merits, the question of procedural default now becomes "necessary to final disposition of the appeal."

Though the court of appeals was wrong to reject Appellant's claim on the merits, it is nonetheless precluded from granting Appellant relief if his claim is subject to procedural default and has in fact been forfeited. *See, e.g., Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016) ("Preservation of error is a systemic requirement. The systemic nature of the requirement means that a first-tier appellate court may not *reverse* a judgment of conviction without first addressing any issue of error preservation.").

**13.** In *Marin v. State*, we sorted a defendant's rights into three distinct categories for procedural default purposes. 851 S.W.2d 275 (Tex. Crim. App. 1993). "Category one" recognizes that there are a number of systemic obligations, requirements, or prohibitions which are non-waivable and non-forfeitable. These systemic requirements may be invoked for the first time on appeal, and courts will recognize them irrespective of a defendant's express waiver or forfeiture by inaction. Under "category two," a defendant has an array of rights which must be implemented unless expressly waived. If the defendant expressly waives these rights, he may not later invoke them on appeal. Finally, the majority of a defendant's rights, called "category three," will only be implemented upon request. A defendant's silence at trial will forfeit his ability to claim "category three" rights on appeal. We have yet to expressly determine into which *Marin* category the participation of a disqualified judge would fall.