

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-90,325-01

### IN RE HONORABLE VELIA MEZA, Relator

### ON APPLICATION FOR WRIT OF MANDAMUS
### CAUSE NO. 04-19-00444-CR
### IN THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

**KELLER, P.J., delivered the opinion for a unanimous Court.**

A district attorney called a subordinate into his office to discuss a case and review the case file. Within a few weeks, the district attorney's official status ended, he became part of a private law firm, and a member of that private law firm substituted in as defense counsel in the case. The State moved to disqualify the entire firm. The trial court denied the motion, but the court of appeals granted mandamus relief, ordering the trial court to disqualify the entire firm. The trial court now seeks mandamus relief from the court of appeals's order. We conclude that under unequivocal, well-settled law, the former district attorney was disqualified from acting as defense counsel. But we also

conclude that the same cannot be said for the other members of the law firm. Consequently, we deny mandamus in part and grant mandamus in part.

## I. BACKGROUND

### A. Facts

In 2017, Michael Stovall was indicted for family violence assault. At the time, Nico LaHood was the District Attorney of Bexar County. On December 20, 2018, Assistant District Attorney Melissa Saenz received an email summoning her to a meeting with LaHood to discuss Stovall's case. Saenz recounted that, during this meeting, she and LaHood reviewed 911 calls and photographs, and they expressed different opinions about whether an injury suffered by the complainant looked like a bite mark.[1] Saenz said that LaHood asked her about the strengths and weaknesses of the State's case. LaHood did not, however, tell Saenz how to prosecute the case.

On January 1, 2019, Saenz was moved to a different court, so she never made an appearance in the case. She did not write any work product notes in the State's file, and she did not talk about the facts of the case, or her impressions of those facts, to the prosecutors who have worked on the case since then. Saenz also testified that there was nothing in the file that she reviewed that would not have to be turned over in accordance with a prosecutor's obligations under *Brady v. Maryland*[2] and the Michael Morton Act.[3]

As of January 1, 2019, LaHood's term as District Attorney had ended. He became a partner

---

[1] This testimony was given at a hearing on the State's motion to disqualify LaHood and his law firm from representing Stovall.

[2] 373 U.S. 83 (1963) (prosecutor's duty to disclose exculpatory evidence).

[3] *See* TEX. CODE CRIM. PROC. 39.14 (discovery statute).

in a private law firm with Jay Norton and Jason Goss. On January 7, 2019, Goss filed a motion to substitute himself as Stovall's counsel. He alone signed the pleading, but "LaHood Norton Law Group" appears under his signature. According to Marissa Giovenco, a subsequent prosecutor on the case, Goss talked with her about getting the case dismissed. She testified that he told her that he had information that would kill the case but would not say what the information was. LaHood was in the courtroom, talking to the judge at the bench, but as he walked by Giovanco and Goss, LaHood "kind of asked what we were talking about, and he said that he would talk to Jason [Goss] and see if it was something that they could tell me." Later that day, LaHood informed her that they would not be able to share that information with her. On May 17, 2019, LaHood, Norton, and Goss all signed a document requesting discovery in the Stovall case. On June 3, 2019, the State filed a motion to disqualify the LaHood Norton firm due to LaHood's involvement in the case while he was District Attorney. At a hearing on the motion, the trial court heard the testimony we have recounted earlier.[4] LaHood did not testify at the hearing.[5]

## B. Trial Court's Ruling

The trial court denied the State's motion with a written order, which set out Saenz's testimony consistent with our recounting above.[6] In the order, the trial court pointed to the

---

[4] The hearing included other testimony by Saenz and testimony by other witnesses. For what is generally a more expansive recitation of what occurred, *see In re State ex. rel. Gonzales*, No. 04-19-00444-CR, 2019 Tex. App. LEXIS 7801, *1-4 (Tex. App.—San Antonio August 28, 2019) (not designated for publication).

[5] LaHood did not appear as counsel at the hearing and was reserved as a potential witness. Attorney Goss told the trial court, "we will not share with him. We understand the Court's instructions and we will not share with him anything."

[6] The trial court's order did not explicitly address whether this testimony was credible. Neither did defense counsel, but defense counsel did not dispute its truth, and counsel's argument

presumption in favor of a defendant's counsel of choice and stated the need to exercise extreme caution in deciding whether to override that choice on the basis of other important interests. The trial court summarized the rule in civil cases as involving two irrebuttable presumptions for an attorney who moves from one law firm to another: (1) that he has access to confidential information possessed by the law firm he moves from, and (2) that he shares this information with the law firm he moves to. Under these two presumptions, an attorney can be automatically disqualified from working adversely to a client of the law firm he moved from (if the attorney was there and it is the same matter), and if he is disqualified, the law firm he moves to is disqualified as well. However, the trial court discerned the disqualification rule to be somewhat different in criminal cases, which involve a defendant's right to counsel of choice and where there is a rule that (in the trial court's estimation) allows disqualification only when the failure to do so rises to a due process violation.

As to the present case, the trial court found:

> Even if Mr. LaHood's knowledge of this case is imputed to Mr. Norton and Mr. Goss, and regardless of whether any rules of professional responsibility were violated, this court finds that the State has not met its heavy burden to show that Mr. LaHood was privy to any work product or acquired confidential information pertaining to this case that would not have otherwise been available to defense counsel through the rules of discovery and under *Brady v. Maryland*.

The trial court also found:

> There is no evidence to show that Mr. LaHood actively participated in the prosecution of this case. Mr. LaHood did not tell Ms. Saenz how to prosecute this case or direct Ms. Saenz to dismiss defendant's case.

From these findings, the trial court concluded that "the State has not demonstrated actual prejudice resulting from Mr. LaHood's actions or knowledge with regard to this case." From that conclusion,

at the hearing seemed to assume its truth.

the trial court decided that "it does not have a valid reason under the law to interfere in the defendant's constitutional right to the counsel of his choice."

## C. Court of Appeals Opinion

The State filed a petition for writ of mandamus with the court of appeals. The court of appeals discussed the facts of the case, including Saenz's testimony.[7]

The court then examined whether LaHood's actions as District Attorney disqualified him from representing Stovall.[8] The court observed that Article 2.08 of the Code of Criminal Procedure prevents a former prosecutor from representing a criminal defendant if, while a prosecutor, he was "of counsel for the State" on the defendant's case.[9] Looking for guidance from cases involving the disqualification of judges who were previously prosecutors, the court of appeals concluded that even minor involvement in the case can cause one to be "of counsel for the State" (so long as that involvement is "more than merely perfunctory") and that participation in any manner in the preparation or investigation of the case would qualify.[10] The court concluded that the discussion of the case between LaHood and Saenz was sufficient participation to qualify.[11]

---

[7] *Gonzales*, 2019 Tex. App. LEXIS 7801, at *1-4. The court of appeals's recitation of the facts is, in general, more expansive than in our opinion, but it is by no means complete.

[8] *Id.* at *6-12.

[9] *Id.* at * 6-8 (quoting and discussing TEX. CODE CRIM. PROC. art. 2.08).

[10] *Id.* at *8-11 (discussing *Metts v. State*, 510 S.W.3d 1 (Tex. Crim. App. 2016); *Lee v. State*, 555 S.W.2d 121 (Tex. Crim. App. 1977); *Prince v. State*, 158 Tex. Crim. 65, 252 S.W.2d 945 (1952) (on reh'g)).

[11] *Id.* at *11-12. Giving more detail than the trial court, the court of appeals also referred to LaHood and Saenz discussing the complainant's medical history and emails from Stovall's family to the complainant. *Id.* at *12. These additional details would not change our analysis, so we need not further dwell on them.

Next, the court of appeals examined whether LaHood's disqualification required that the entire firm be disqualified.[12] Relying upon a Fort Worth court of appeals opinion in a civil case, the court concluded that "it is the relationship of the attorneys to the parties and to each other that controls, not whether they have actually engaged in conduct which would create a conflict."[13] The court of appeals observed that the LaHood Norton firm was a small law firm consisting of three lawyers and that the firm advertises each lawyer bringing a "different set of skills to their clients."[14] Relying upon a Fifth Circuit opinion affirming a lower trial court order involving facts similar to the present case, the court of appeals held that disqualification of the entire law firm was required.[15]

Finally, the court of appeals addressed whether Stovall's constitutional right to counsel of choice requires a different result. The court responded that the right to counsel of choice is not absolute and that the strong presumption in favor of counsel of choice can nevertheless be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice.[16] Relying on the Fifth Circuit case cited earlier and a Second

---

[12] *Id.* at *12-13.

[13] *Id.* at *12 (quoting *Dillard v. Berryman*, 683 S.W.2d 13, 15 (Tex. App.—Fort Worth 1984, no writ)) (brackets removed).

[14] *Id.* at *12-13.

[15] *Id.* at *13 (quoting from *United States v. Kitchin*, 592 F.2d 900, 904-05 (5th Cir. 1979)) ("Given the presumed interplay among lawyers who practice together, the rule applies not only to individual attorneys but also requires disqualification of the entire firm as well as all employees thereof. . . . more is at stake than the confidences of a private litigant. The public has an interest in seeing that criminal laws are enforced. . . . For a former prosecutor to be associated with the lawyer who represents a person he earlier helped prosecute, even if only at an embryonic stage, would likely provoke suspicion and distrust of the judicial process.").

[16] *Id.* at *13-14.

Circuit case, the court of appeals found such considerations to be present here.[17]

Concluding that the trial court erred by denying the State's motion to disqualify the LaHood Norton Law Group from serving as defense counsel for Stovall, the court of appeals conditionally granted the mandamus petition.[18] The trial court has now petitioned this Court for a writ of mandamus to require the court of appeals to withdraw its issuance of a writ of mandamus.

## II. ANALYSIS

### A. Mandamus Standards

When this Court is called upon in a mandamus proceeding to review the issuance of mandamus by a court of appeals against a trial court, "we review the propriety of the trial court's conduct itself by undertaking a *de novo* application of the two pronged test for mandamus relief."[19] In this case, that means deciding, *de novo*, whether the State was entitled to the mandamus relief of forcing the trial court to disqualify the LaHood Norton law firm as Stovall's attorneys.

The two pronged test for mandamus requires the record to establish: (1) that the relator has no adequate remedy at law, and (2) that what he seeks to compel is a ministerial act, not involving a discretionary or judicial decision.[20] The first prong is not seriously contested here. The State has no adequate remedy because it had no immediate right to appeal the trial court's order refusing to

---

[17] *Id.* at \*14 (citing *Kitchin* and *United States v. Ostrer*, 597 F.2d 337, 340 (2d Cir. 1979)).

[18] *Id.* at \*14-15.

[19] *In re State ex rel. Wice v. Fifth Judicial Dist. Court of Appeals*, 581 S.W.3d 189, 193-94 (Tex. Crim. App. 2018).

[20] *Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex. Crim. App. 2011) (quoting from *State ex rel. Young v. Sixth Judicial District Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007)).

disqualify counsel and because its only ultimate right to complain would be a cross-point that depends on the defendant taking an appeal from a conviction.[21] The contested question here is whether the ministerial act prong is satisfied.

The ministerial act prong is satisfied if the record establishes "a clear right to the relief sought," which means that "the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles."[22] Sometimes an issue of first impression will qualify for mandamus relief.[23] This can be true when the issue involves an unambiguous statute[24] or when "the combined weight of our precedents clearly establishes" the proposition of law on which relief is predicated.[25]

### B. Does Unequivocal, Well-Settled Law Require LaHood to be Disqualified?

The first issue is whether the court of appeals was correct to conclude that unequivocal, well-settled law requires that LaHood be disqualified as Stovall's counsel. Article 2.08 provides:

> District and county attorneys shall not be of counsel adversely to the State in any case, in any court, nor shall they, after they cease to be such officers, be of counsel adversely to the State in any case in which they have been of counsel for the State.[26]

In addressing a prior, identically worded, version of the statute in *King v. State*, this Court held that a county attorney who filled out the complaint charging the defendant with a crime could not later

---

[21] *See In re State ex rel. Weeks*, 391 S.W.3d 117, 123 (Tex. Crim. App. 2013).

[22] *Bowen*, 343 S.W.3d at 810 (quoting from *Young*, 236 S.W.3d at 210).

[23] *Weeks*, 391 S.W.3d at 122.

[24] *Wice*, 581 S.W.3d at 194-95.

[25] *Weeks*, 391 S.W.3d at 126.

[26] TEX. CODE CRIM. PROC. art. 2.08(a).

represent the defendant in a criminal prosecution arising from the same facts.[27]  This was true even though filling out the complaint was the only thing the county attorney did for the State in the case.[28]  In *Parker v. State*, the defendant claimed that his attorney should have been disqualified because he had been an assistant district attorney at the time of the offense.[29]  This Court held that the defendant's objection was untimely because it was raised for the first time on appeal.[30]  In explaining the basis for the claim, the Court said that, at most, the attorney "was present at one time when appellant was being questioned after his arrest and his name does appear as counsel for the state in the bond hearing."[31]  The Court stated, "Had the state moved to disqualify [counsel] prior to trial as was done in *King v. State*, another question would have been presented."[32]

The court of appeals did not rely upon these cases but relied instead on cases construing a statute that applies when a prosecutor becomes a judge—Article 30.01.  That statute provides in relevant part: "No judge or justice of the peace shall sit in any case . . . where he has been of counsel for the State or the accused."[33]  Both the prosecutor-turned-defense attorney and the prosecutor-turned-judge statutes use the same phrase "of counsel for the State" in the exact same way.  We have held that when two statutes "are not only similar in purpose and operation, but also appear designed

---

[27]  184 Tex. Crim. 583, 587-88, 286 S.W. 231, 233 (Tex. Crim. App. 1926).

[28]  *Id.*, 184 Tex. Crim. at 588, 286 S.W. at 233.

[29]  457 S.W.2d 638, 640 (Tex. Crim. App. 1970).

[30]  *Id.*

[31]  *Id.*

[32]  *Id.*

[33]  TEX. CODE CRIM. PROC. art. 30.01.

to work together, with the identical phrase accomplishing that cooperation," that circumstance "strongly supports interpreting the same phrase to mean the same thing."[34]  Here, we have parallel statutes using the identical phrase for the exact same purpose.  Under that circumstance, the caselaw for what "of counsel of the State" means in Article 30.01 applies to the meaning of that same phrase in Article 2.08, so the court of appeals did not err in considering those cases in the mandamus context.

Those cases do not conflict with *King* and *Parker* but provide further guidance about what level of involvement makes a prosecutor "of counsel for the State" in a particular case.  In *Prince v. State*, this Court held that a prosecutor was "of counsel for the State" if  he "participated in any manner in the preparation or investigation of the case."[35]  In *Metts v. State*, we explained that the prosecutor must have "investigated, advised or participated" as counsel in the case, or, stated another way, his "involvement must have arisen to a level of active participation."[36]  We surveyed the caselaw relating to Article 30.01 and observed a variety of relatively minor acts that would make a prosecutor qualify as "of counsel" for the State.[37]  We held that merely signing a jury-waiver form was enough.[38]  Our discussion included the earlier case of *Lee v. State*, where we held sufficient a prosecutor's act of writing a letter to defense counsel stating what his punishment recommendation

---

[34]  *Ex parte Kussmaul*, 548 S.W.3d 606, 634 (Tex. Crim. App. 2018) (quoting from *Ex parte White*, 506 S.W.3d 39, 44 (Tex. Crim. App. 2016)).

[35]  158 Tex. Crim. at 67, 252 S.W.2d at 946.

[36]  510 S.W.3d at 4.

[37]  510 S.W.3d at 4-6.

[38]  *Id.* at 5-6.

would be.[39]  Although the prosecutor had never appeared in the case and did not remember writing the letter, the letter nevertheless revealed that he had reviewed the defendant's file.[40]  We also discussed *Gamez v. State* for the proposition that a prosecutor's conduct would not make him of counsel for the State if it was a "mere 'perfunctory act.'"[41]  In that case, the prosecutor's name appeared "rubber stamped" on the State's announcement of ready, but the prosecutor had never made an appearance in the case and had never examined the State's files.[42]  To be sufficient, the participation has to be in the same case as the one before the prosecutor-turned-judge.[43]

Saenz's testimony, if credited, was indisputably sufficient to establish that LaHood was of counsel for the State under the caselaw construing Articles 2.08 and 30.01.  LaHood examined the State's files, and he discussed the evidence with the assistant district attorney who had been assigned to the case.  He offered his opinion of whether the evidence showed a bite mark.  This was not mere "water-cooler" talk between co-workers about a new case in the office to which they were not assigned.  It is clear that by reviewing the file and engaging in a discussion with the assistant district attorney about the evidence, LaHood participated in the preparation of the case.  LaHood's involvement in the case far exceeds the kind of involvement we have previously held sufficient.

The next question is whether Saenz's testimony must be credited.  The trial court recited Saenz's testimony extensively but did not explicitly comment on its truth or credibility.  It is, at the

---

[39]  *Id.* at 5 (citing *Lee*, 555 S.W.2d at 125). .

[40]  *Id.* (citing *Lee*, 555 S.W.2d at 123, 125).

[41]  *Id.* (citing *Gamez v. State*, 737 S.W.2d 315, 319-20 (Tex. Crim. App. 1987)).

[42]  *Id.*

[43]  *Id.* (citing *Holifield v. State*, 538 S.W.2d 123, 125 (Tex. Crim. App. 1976)).

least, true that the trial court assumed the truth of that testimony for purposes of its ruling. But the trial court's order suggests more than that. The trial court referred to "Mr. LaHood's knowledge of this case." And the trial court's finding that Mr. LaHood was not privy to any information that would not have otherwise been turned over to the defense flows directly from Saenz's testimony, as does the trial court's statement that LaHood did not tell Saenz how to prosecute the case. Moreover, Saenz was an officer of the court, her testimony was not disputed, that testimony was corroborated to some degree by documentary evidence (an email), and LaHood could have, but did not, testify to controvert such testimony.[44] Under those circumstances, we conclude that the trial court implicitly found Saenz's testimony to be true in its entirety.

The trial court did say that "[t]here is no evidence to show that Mr. LaHood actively participated in the prosecution of this case," but that statement appears to be a legal conclusion rather than a comment on the believability of Saenz's testimony. The trial court's comment about LaHood's lack of active participation was followed by and obviously depends on the trial court's statement that LaHood did not tell Saenz how to prosecute the case. The trial court's legal conclusion is indisputably erroneous because exerting control over the progress of a case is not required by caselaw to establish active participation. By reviewing the State's file and discussing the case with Saenz, LaHood indisputably qualified as "of counsel for the State" for purposes of Article 2.08.

The trial court also made a finding that LaHood did not have access to confidential

---

[44] *See Cameron v. State*, 490 S.W.3d 57, 62 (Tex. Crim. App. 2014) ("It is well established that 'this Court accepts as true factual assertions made by counsel which are not disputed by opposing counsel.'") (quoting *Thieleman v. State*, 187 S.W.3d 455, 457 (Tex. Crim. App. 2005), citing *Pitts v. State*, 916 S.W.2d 507, 510 (Tex. Crim. App. 1996)).

information, although that finding seems mainly relevant to the trial court's conclusion that the entire law firm was not disqualified, which we will discuss later. Suffice it to say here, Article 2.08 contains no requirement that the former prosecutor possess confidential information belonging to the State; it is a rule of automatic disqualification. The statute disqualifies LaHood by virtue of his participation in the case, regardless of whether he obtained any confidential information belonging to the State.

The remaining question, with respect to LaHood, is whether the trial court could conclude that Article 2.08's dictates must give way to Stovall's constitutional right to counsel of his choice. It is true that "courts must exercise caution in disqualifying defense attorneys, especially if less serious means would adequately protect the government's interests."[45] But a defendant's right to counsel of choice is not absolute.[46] "[W]hile there is a strong presumption in favor of a defendant's right to retain counsel of choice, this presumption may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice."[47] And while a trial court typically has "wide latitude in balancing the right to counsel of choice against the needs of fairness,"[48] the Supreme Court has held that federal courts nevertheless have an "independent interest in ensuring that criminal trials are conducted within the ethical

---

[45] *Bowen*, 343 S.W.3d at 813 (quoting from *Gonzalez v. State*, 117 S.W.3d 831, 837 (Tex. Crim. App. 2003)).

[46] *Gonzalez*, 117 S.W.3d at 837.

[47] *Id.*

[48] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006).

standards of the profession and that legal proceedings appear fair to all who observe them."[49]  In

*Bowen*, we applied this maxim to state courts.[50]

The legislature has stepped in with Article 2.08 to protect that interest by barring a former

prosecutor from representing a defendant in the same case in which the prosecutor was of counsel

for the State.  In the opposite context, in which a defense attorney later prosecutes the defendant, we

have explained, "For a prosecuting attorney to 'switch sides' in the same criminal case is an actual

conflict of interest and constitutes a due-process violation, even without a specific showing of

prejudice. This has been called a 'hard and fast rule of disqualification.'"[51]  It is true that the State

does not have a federal constitutional right to due process.  But the independent interest of the courts

in "ensuring that criminal trials are conducted within the ethical standards of the profession and that

legal proceedings appear fair to all who observe them," is relevant when a prosecutor switches sides

to become defense counsel just as it is when defense counsel becomes the prosecutor.  It is beyond

dispute that Article 2.08's rule of automatic disqualification is reasonable and constitutional in the

usual case.  No attempt has been made to show a special need for LaHood to represent Stovall.

Finally, LaHood argues that the State forfeited its right to complain by failing to move to

disqualify him in a timely manner.  As far as we can tell from the record before us, the first time

LaHood signed a pleading in the Stovall case was on May 17.  The State moved to disqualify

LaHood and the entire firm on May 30.  At least as to LaHood, the motion to disqualify was timely.

---

[49]  *Wheat v. United States*, 486 U.S. 153, 160 (1988) (saying "federal courts" have this independent interest). *See also Bowen*, 343 S.W.3d at 816 (quoting this passage in part, saying "trial courts" have this independent interest).

[50]  *Bowen*, 343 S.W.3d at 816.

[51]  *Landers v. State*, 256 S.W.3d 295, 304 (Tex. Crim. App. 2008).

We conclude that the court of appeals was correct to hold that, under unequivocal, well-settled law, LaHood was disqualified from representing Stovall. To the extent the court of appeals's opinion grants mandamus relief as to LaHood's participation in the case, we agree with the court of appeals, and we deny the trial court's request for mandamus relief.

**B. Does Unequivocal, Well-Settled Law Require the Entire Law Firm to be Disqualified?**

We next turn to whether the court of appeals was correct to conclude that unequivocal, well-settled law requires the disqualification of the entire law firm. Article 2.08 says nothing about disqualifying the entire law firm to which the former prosecutor belongs; it speaks only to disqualifying the former prosecutor. In holding that the relationship of the attorneys to the parties and each other is what controls, the court of appeals relied upon *Dillard*, a court of appeals decision from a different district in a civil case.[52] No matter how one looks at it, such a decision does not constitute binding authority.[53] The court of appeals also cited federal circuit decisions,[54] but those also are not binding on state courts.[55] The State cites two Texas Supreme Court decisions for the proposition that disqualification of an attorney automatically requires disqualification of the entire

---

[52] *See supra* at n.13.

[53] *See Franklin v. State*, 579 S.W.3d 382, 385 (Tex. Crim. App. 2019) (court of appeals decision not binding on Court of Criminal Appeals); *In re State ex rel. Mau v. Third Court of Appeals*, 560 S.W.3d 640, 647-48 (Tex. Crim. App. 2018) (court of appeals decision not binding on trial courts outside of its district); *McNatt v. State*, 188 S.W.3d 198, 201-02 (Tex. Crim. App. 2006) (before pointing to non-binding nature of court of appeals opinion, noting it was from a civil case).

[54] *See supra* at nn.15, 17.

[55] *Ex parte Evans*, 338 S.W.3d 545, 552 n.27 (Tex. Crim. App. 2011); *Mosley v. State*, 983 S.W.2d 249, 256 (Tex. Crim. App. 1998).

firm.[56] This is based at least in part on the two irrebuttable presumptions for an attorney who moves from one private firm to another: that the attorney has access to confidential information from the firm he leaves and shares that information with the firm he moves to.[57] But Texas Supreme Court decisions are generally not binding precedent in criminal cases.[58]

A review of the Texas Supreme Court cases shows other flaws in the reliance by the court of appeals and the State on these authorities. The Texas Supreme Court cases rely upon Texas Disciplinary Rule of Professional Conduct 1.09.[59] The Texas Supreme Court looks to the Disciplinary Rules of Professional Conduct for guidance in determining when an attorney is disqualified,[60] but this Court has taken the position that a disciplinary rule cannot by itself furnish a sufficient basis for disqualification.[61] The decisions relied upon by the court of appeals suffer from the same shortcoming: the court of appeals decision in *Dillard* looked to what was then the Code of

---

[56] *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 824 (Tex. 2010); *Nat'l Med. Enterprises, Inc. v. Godbey,* 924 S.W.2d 123, 131 (Tex. 1996).

[57] *Columbia Valley Healthcare Sys.*, 320 S.W.3d at 824.

[58] *Kirk v. State*, 454 S.W.3d 511, 514 (Tex. Crim. App. 2015) (characterizing Texas Supreme Court holding as persuasive authority); *Rankin v. State*, 974 S.W.2d 707, 711 (Tex. Crim. App. 1996) (stating that "the decisions of the Texas Supreme Court in no way bind us"). *But see Ex parte Rhodes*, 974 S.W.2d 735, 740 (Tex. Crim. App. 1998) (this Court was "bound by Texas Supreme Court precedent" on a criminal contempt conviction arising out of civil proceedings).

[59] *Columbia Valley Healthcare Sys.*, 320 S.W.3d at 824; *Godbey*, 924 S.W.2d at 131.

[60] *Henderson v. Floyd*, 891 S.W.2d 252, 253 (Tex. 1995).

[61] *Landers*, 256 S.W.3d at 310 & n.56 ("A district attorney may be disqualified only for a violation of the defendant's due-process rights, not for violations of the disciplinary rules of professional conduct alone.") ("The disciplinary rules cannot be turned into a tactical weapon to disqualify opposing counsel unless the defendant can show that the alleged rule violations deprived him of a fair trial or otherwise affected his substantial rights.").

Professional Conduct,[62] and the cited Fifth Circuit decision relied on an ethics rule by the American Bar Association.[63]

Moreover, even if it could alone provide a basis for disqualification, Rule 1.09 is not the applicable rule here. Rule 1.09(b) provides: "Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a)."[64] Comment 1 of Rule 1.09 says that the rule applies to a lawyer who switches from one private firm to another, and that a lawyer who moves from government to private employment is governed by Rule 1.10.[65] Rule 1.10 provides that "a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation."[66] The rule also prohibits such a lawyer from representing a client whose interests are adverse to the government agency if the lawyer is in possession of confidential information as a result of

---

[62] *Dillard*, 683 S.W.2d at 15.

[63] *Kitchin*, 592 F.2d at 904.

[64] TEX. DISC. R. PROF. CONDUCT 1.09(b).

[65] *Id.* 1.09, comment 1 ("Rule 1.09 addresses the circumstances in which a lawyer in private practice, and other lawyers who were, are or become members of or associated with a firm in which that lawyer practiced or practices, may represent a client against a former client of that lawyer or the lawyer's former firm. Whether a lawyer, or that lawyer's present or former firm, is prohibited from representing a client in a matter by reason of the lawyer's successive government and private employment is governed by Rule 1.10 rather than by this Rule.").

[66] *Id.* 1.10(a).

government employment.[67]  But under Rule 1.10, disqualification of the lawyer need not result in disqualification of the firm if the disqualified lawyer "is screened from any participation in the matter and is apportioned no part of the fee therefrom" and "written notice is given with reasonable promptness to the appropriate government agency."[68]

The Texas Supreme Court cases that relied on Rule 1.09 involved individuals who moved from one private firm to another, not from a government agency to a private firm.[69]  And while the State cites one of those cases for factors to consider in determining whether screening measures are effective, those factors were invoked because the individual who transferred from one private firm to another was a non-lawyer.[70]  It is unclear that those factors apply to a Rule 1.10 inquiry.  And while Rule 1.09 rests on the two irrebuttable presumptions of access to and sharing of confidential information, Rule 1.10 rests on neither of these presumptions.  As already explained, Rule 1.10 does not rest on an irrebuttable presumption of sharing confidential information because the attorney can be screened from the case handled by the firm he moves to.  But it is also true that Rule 1.10 does not rest on an irrebuttable presumption of access to confidential information in the possession of the government agency the attorney leaves: there must be either a showing of "personal and substantial"

---

[67]  *Id.* 1.10(c).

[68]  *Id.* 1.10(b).  *See also id.* 1.10(d).

[69]  *See Columbia Valley Healthcare Sys.*, 320 S.W.3d at 822-23; *Godbey*, 924 S.W.2d at 124-26.

[70]  *Columbia Valley Healthcare Sys.*, 320 S.W.3d at 824 ("A nonlawyer employee who worked on a matter at a prior firm is also subject to an irrebuttable presumption 'that confidences and secrets were imparted' to the employee at the firm . . . However, unlike with attorneys, a nonlawyer is not generally subject to an irrebuttable presumption of having shared confidential information with members of the new firm.").

participation in the matter or a showing of possession of confidential information. With respect to the latter, the Texas Supreme Court has held that "the rule operates only when the former government attorney has 'actual as opposed to imputed knowledge.'"[71] With respect to the former—personal and substantial participation—the Texas Supreme Court has held it must be "'hands on' involvement."[72]

The differences between Rules 1.09 and 1.10 also undermine the applicability of *Dillard* and the federal circuit cases relied upon by the court of appeals. *Dillard* was decided under a predecessor to our current ethics rules, and the Supreme Court has suggested that Rule 1.10's requirement of "hands on" involvement or actual access to confidential information differs from the predecessor rule.[73] Moreover, the Fifth Circuit case cited by the court of appeals seems to rely on an absolute rule of disqualification that leaves no room for the screening measures allowed by Rule 1.10.[74] And the other federal circuit case cited by the court of appeals appears to involve an attorney's ability to

---

[71] *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 657 (Tex. 1990). *See also* R. 1.10 Comment 7. ("Paragraph (c) operates only when the lawyer in question has actual as opposed to imputed knowledge of the confidential government information.").

[72] *Spears*, *supra*.

[73] *Id.* (Saying, "While the predecessor to Rule 1.10, barring private employment in a matter in which a former government attorney had 'substantial responsibility,' might permit such a construction, the new rule does not," and then discussing the requirements of "hands on" involvement or actual access to confidential information).

[74] *See Kitchin*, 592 F.2d at 904 ("Finally, given the presumed interplay among lawyers who practice together, the rule applies not only to individual attorneys but also requires disqualification of the entire firm as well as all employees thereof. Thus, it does not matter that Ludwick is only an associate to the defendant's counsel of record.") (citations omitted).

use confidential information,[75] which would not apply in a case where the attorney was screened and the other members of the firm had no confidential information to use.

If Rule 1.10 were held to apply, the question would arise whether the former government lawyer, in this case LaHood, participated "personally and substantially" in the case or whether he actually possessed confidential information. The Texas Supreme Court has said that participation must be "hands on," which at least meets the element of "personal," but the court has not said whether "substantial" dictates a certain level of hands-on involvement (or what that level would be).[76] And while we do have cases construing the level of participation required under Articles 2.08 and 30.01, there are no cases saying that Rule 1.10's phrase "personal and substantial" embodies the same standard. As for the actual possession of confidential information, the trial court found that LaHood possessed none, and that finding appears to be supported by the record.[77]

And even if all of those hurdles were cleared, it is still true that Rule 1.10 is merely a disciplinary rule, and this Court has declined in the past to accord relief based on a disciplinary rule alone.[78] A defendant's constitutional right to counsel of choice might be a basis for crafting a less

---

[75] *See Ostrer*, 597 F.2d 340 ("Because much of what a Government attorney learns while investigating a case does not become part of the prosecution's files, the fact that some impeachment material may be available to appellant under *Brady v. Maryland* minimizes but does not eradicate the unfair advantage that appellant secures through Pollack's representation.") (citation omitted).

[76] *See Spears*, 797 S.W.2d at *passim.*

[77] *See Cameron v. State*, 482 S.W.3d 576, 582 (Tex. Crim. App. 2016) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997): "[A]s a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact finding are based on an evaluation of credibility and demeanor.") (brackets in *Cameron*).

[78] *See supra* at n.61 and accompanying text.

serious remedy than disqualification.[79] And the rules of procedural default can potentially come into play.[80]

The upshot of all this is that, although Article 2.08 unequivocally barred LaHood from participating in the case, there is no similar authority unequivocally barring the other members of LaHood's firm. A number of complicating factors stand in the way of a conclusion that settled law requires the entire law firm to be disqualified: Article 2.08 doesn't talk about law firms, and there is no caselaw authority from this Court that would mandate disqualification of the entire firm. There are unsettled legal questions concerning whether Disciplinary Rule 1.10 would apply to this case, and the rule might permit the lesser remedy of screening LaHood from the case. As a mere disciplinary rule, Rule 1.10 is not sufficient by itself to require a grant of relief, and the trial court found that LaHood had no confidential information so the State's substantial rights were not affected. And absent any unambiguous statutory authority, the constitutional right to counsel of choice arguably controls or at least gives the trial court the discretion to fashion a lesser remedy than disqualification.[81]

It has not been shown under unequivocal, well-settled law that the entire law firm was disqualified from representing Stovall. To the extent the court of appeals's opinion grants mandamus relief as to members of the law firm other than LaHood, we conclude that the court of

---

[79] *See supra* at n.45 and accompanying text.

[80] *See supra* at n.30 and accompanying text (indicating that a claim under Art. 2.08 is forfeitable). *See also State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) ("Ordinary notions of procedural default should apply equally to the defendant and the State.").

[81] Because we grant relief as to members of the firm other than LaHood, we need not address their claim that the motion to disqualify was untimely as to them.

appeals acted erroneously, and we grant the trial court's request for mandamus relief.

### III. DISPOSITION

We deny the trial court's request for mandamus relief as it relates to Nico LaHood. He is disqualified from representing the defendant Michael Stovall in this case and must be screened from any participation in the case. We conditionally grant the trial court's request for mandamus relief as it relates to the other members of the law firm and direct the court of appeals to rescind its mandamus order to that extent. The writ of mandamus will issue only in the event that the court of appeals fails to comply with this opinion.

Delivered: November 18, 2020

Publish